[Crim. No. 11200.   In Bank.   Nov. 21, 1967.]

THE  PEOPLE,  Plaintiff  and  Appellant,  v.  DAVID
NOROFF et al., Defendants and Respondents.

Roger Arnebergh, City Attorney, Philip E. Grey, Assistant City Attorney, and Michael T. Sauer, Deputy City Attorney, for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, and Gordon Ringer, Assistant Attorney General, as Amici Curiae on behalf of Plaintiff and Appellant.

Herald Price Fahringer and Gerald J. Levie for Defendants and Respondents.

TOBRINER, J.—Defendants were charged in the Municipal Court of the Los Angeles Judicial District with a violation of Penal Code section 311.2, which proscribes the possession of obscene matter for distribution in this state.[1] In chambers, the trial court examined the challenged material, a single copy of a magazine entitled ''International Nudist Sun, Vol. 1, No. 5'' (hereinafter referred to as ''INS #5''). The court ruled that the magazine fell within the constitutional protection of the First and Fourteenth Amendments of the United States Constitution; concluded that it was not ''obscene''[2] within the meaning of Penal Code section 311, subdivision (a) ; and ordered the case dismissed. On appeal by the People, the Appellate Department of the Superior Court of Los Angeles County affirmed and then certified the case to the Court of Appeal which granted a transfer. After reversal by the Court of Appeal, we granted a hearing.

The People initially charged that INS #5 was obscene on its face. Unlike *Ginzburg* v. *United States* (1966) 383 U.S.

---

[1] Section 311.2 provides: ''Every person who knowingly: sends or causes to be sent, or brings or causes to be brought, into this State for sale or distribution, or in this State prepares, publishes, prints, exhibits, distributes, or offers to distribute, or has in his possession with intent to distribute or to exhibit or offer to distribute, any obscene matter is guilty of a misdemeanor.''

[2] Penal Code section 311 provides in part: '' (a) 'Obscene' means that to the average person, applying contemporary standards, the predominant appeal of the matter, taken as a whole, is to prurient interest, *i.e.,* a shameful or morbid interest in nudity, sex, or excretion, which goes substantially beyond customary limits of candor in description or representation of such matters and is matter which is utterly without redeeming social importance. . . .''

463 [16 L.Ed.2d 31, 86 S.Ct. 942], this is *not* a case in which ''the prosecution charged the offense in the context of the circumstances of production, sale, and publicity and assumed that, standing alone, the publications themselves might not be obscene.'' (*Id.,* at p. 465 [16 L.Ed.2d at p. 35].) On the contrary, the prosecution expressly recognized that the only issue relevant to its charge was the obscenity of the magazine per se.

We cannot accept the People's argument, advanced for the first time on appeal, that the trial court should have permitted the prosecution to go to the jury with evidence bearing upon the defendant's ''pandering'' of the magazine in question. First, the indictment did not charge the defendants with pandering; second, the State Legislature has created no such crime.[3] Insofar as dictum in *Landau* v. *Fording* (1966) 245 Cal.App.2d 820, 824, 830 [54 Cal.Rptr. 177], affd. per curiam (1967) 387 U.S. 456 [18 L.Ed.2d 1317, 87 S.Ct. 2109], suggests a contrary reading of the California statutes, it is hereby disapproved.[4]

Since there can thus be no doubt that the trial court properly proceeded to determine from its own examination of INS #5 whether or not the magazine itself was obscene in the constitutional sense (*Zeitlin* v. *Arnebergh* (1963) 59 Cal.2d 901, 904, 908-911 [31 Cal.Rptr. 800, 383 P.2d 152, 10 A.L.R.3d 707]; see also *Jacobellis* v. *Ohio* (1964) 378 U.S. 184, 190 fn. 6 [12 L.Ed.2d 793, 799, 84 S.Ct. 1676]; *New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254, 285 [11 L.Ed.2d 686, 709, 84 S.Ct. 710, 95 A.L.R.2d 1412]), the only question properly

---

[3]Earlier this year, the Attorney General advocated the amendment of the Penal Code to prohibit the offense of ''pandering''—''the business of purveying textual or graphic matter openly advertised to appeal to the erotic interest of . . . customers'' (*Ginzburg* v. *United States, supra,* 383 U.S. at p. 467 [16 L.Ed.2d at p. 36]). (See A Report to the California Legislature on Obscenity: the Law and the Nature of the Business (April 6, 1967) 13-16.) To date, no such amendment has been enacted.

[4]We have held that Penal Code section 311.2 does not apply to ''matter produced solely for the personal enjoyment of the creator or as a means for the improvement of his artistic technique'' (*In re Klor* (1966) 64 Cal.2d 816, 820 [51 Cal.Rptr. 903, 415 P.2d 791]). Given the decision in *Griswold* v. *Connecticut* (1965) 381 U.S. 479 [14 L.Ed.2d 510, 85 S.Ct. 1678] (cited in *Klor* at p. 820), we recognized that the interest in regulating the dissemination of obscene material neither requires nor permits intrusion into the essentially private zone of personal use. In this sense alone, ''the central issue in a criminal obscenity trial pivots on the potentially punishable conduct of the defendant rather than upon the allegedly obscene nature of the material.'' (*In re Klor, supra,* 64 Cal.2d at p. 821.) Nothing in *Klor,* of course, suggested the adoption of a ''pandering'' concept similar to that elaborated in *Ginzburg* in the context of the federal obscenity statute.

794

before us is whether the trial court committed error in deciding that INS #5 was constitutionally protected. ▆▆▆ We uphold the trial court's determination and conclude that INS #5 is not obscene.

We turn at once to the magazine itself. Its text, illustrated by numerous photographs of naked adults, proclaims the supposed virtues of nudism as a "pattern of life." One could hardly suggest that the articles in the magazine are provocative or even in bad taste.[5] The publication admittedly makes no effort to conceal either male or female genitals, and several of the poses seem contrived to preserve genital exposure at the expense of aesthetic considerations. Most of the pictures, however, depict entirely innocuous outdoor activities at a nudist colony or sunbathing camp; none of the photographs displays any form of *sexual activity*.[6] *Viewed as a whole* (*Roth* v.

---

[5] We quote here a few typical passages:

"Nudism is . . . a movement of individuals who are personally convinced of its rightness. Within each nudist there is a strong conviction that the pattern of life he seeks to live is not only right in the eyes of God and the just, but more so than the conventional mode of life. . . .

"One of our most popular sports in summer is swimming for which millions of suits are sold each year to accommodate the swimmers. The suits, however, are not only unnecessary to the enjoyment of swimming but are actually an annoyance. . . . Medical opinion suggests that if one wishes to lounge on the beach, he should do so before entering the water, because if the bather takes a dip and then does his loafing he is creating a very suitable abode for fungus organisms in the area kept moist by his suit. Yet we all spend considerable amounts of money in order to wear bathing suits. All this suggests that there are times when clothes are not only undesirable, but even detrimental. However, if these were the only considerations there would probably be no nudists. It takes positive advances to induce people to make changes. . . ."

[6] The graphic depiction of such sexual activity seems to be the distinguishing feature of the only materials which the United States Supreme Court has ever ruled obscene. The publications involved in *Ginzburg* v. *United States, supra,* 383 U.S. 463, contained descriptions and photographic essays dealing explicitly and dynamically with sexual relations; the court noted that the petitioners were guilty of "*animating* sensual detail to give the publication a salacious cast . . . ." (Italics added.) (*Id.,* at p. 471 [16 L.Ed.2d at p. 38].) The materials at issue in *Mishkin* v. *New York* (1966) 383 U.S. 502 [16 L.Ed.2d 56, 86 S.Ct. 958], portrayed "sexuality in many guises. Some depict[ed] relatively normal heterosexual relations, but more depict[ed] such deviations as sadomasochism, fetishism, and homosexuality. Many [had] covers with drawings of scantily clad women being whipped, beaten, tortured, or abused. . . ." (*Id.,* at p. 505 [16 L.Ed.2d at p. 60].) Finally, the film central to the litigation in *Landau* v. *Fording, supra,* 387 U.S. 456, "explicitly and vividly revealed acts of masturbation, oral copulation, . . . sadism, masochism and sex" (245 Cal.App.2d 820, 822, affd. *per curiam,* 387 U.S. 456). Such materials, and no others, have been thought to constitute "hard-core pornography." (See the dissenting opinion of Stewart, J., in *Ginzburg* v. *United States, supra,* 383 U.S. at p. 499 [16 L.Ed.2d at p. 54]; see also Magrath, *The Obscenity Cases: Grapes of Roth,* The 1966 Supreme Court Review 7, at 71.)

*United States, supra,* 354 U.S. at p. 489 [1 L.Ed.2d at p. 1509, 77 S.Ct. 1304]), the work is in no sense calculated to stimulate a predominantly sexual response. On the contrary, the static and wooden quality which prevents INS #5 from rising to the level of art simultaneously lifts it above the level of pornography. In the words of Penal Code section 311, we do not find that, "taken as a whole," the "predominant appeal" of the magazine, including its depiction of nude adults, though revealing, "is to prurient interest, *i.e.,* a *shameful* or *morbid* interest in nudity . . . which goes substantially beyond the customary limits of candor." (Italics added.)

■ Since the "dominant theme of the material taken as a whole" does not appeal to "a prurient interest in sex," INS #5 could not be deemed obscene even if it were "patently offensive" and "utterly without redeeming social value." (*Memoirs* v. *Massachusetts* (1966) 383 U.S. 413, 418 [16 L.Ed.2d 1, 6, 86 S.Ct. 975].) ■ We need not explore these issues at greater length, however, since the question before us is not truly an open one. In *Manual Enterprises* v. *Day* (1962) 370 U.S. 478 [8 L.Ed.2d 639, 82 S.Ct. 1432], and in *Sunshine Book Co.* v. *Summerfield* (1958) 355 U.S. 372 [2 L.Ed.2d 352, 78 S.Ct. 365] (per curiam),[7] the Supreme Court summarily reversed obscenity convictions involving magazines more crudely explicit[8] and certainly more vulgar[9] than INS

---

[7]For a discussion of the *per curiam* decision in the *Sunshine Book* case, see *Zeitlin* v. *Arnebergh, supra,* 59 Cal.2d. at pp. 915-916, fns. 22-24; Lockhart and McClure, *Censorship of Obscenity; The Developing Constitutional Standards* (1960) 45 Minn.L.Rev. 5, 32-35.

[8]The District Court in *Sunshine Book Co.* v. *Summerfield* (D.C. 1955) 128 F.Supp. 564, 571, thus described one of the photographs which it thought particularly obscene: "The man . . . is standing [next to a woman] with a side view. By artful use of shadow his face is completely obliterated, his entire pubic area is obliterated by the shadow, but prominently shown in front of the pubic area and against this dark background is his male organ; the corona of the penis is clearly discernible; in fact, even a casual observation of it indicates that the man is circumcized. This obviously has no place even in illustrating the principles of nudism." The rest of the challenged magazine likewise contained "photographs of naked men, women and chilren—principally women—clearly revealing genitals, breasts and other portions of the body normally covered in public." (*Id.,* at p. 573.)

The magazines which the court held nonobscene in *Manual Enterprises* v. *Day, supra,* 370 U.S. 478, consisted "almost entirely of photographs of young men in nude or practically nude poses handled in such a manner as to focus attention on their genitals or buttocks or to emphasize these parts . . . .' " (Clark, J., dissenting, at pp. 526-527 [81 L.Ed.2d at pp. 668-669].) "[S]ome [of the pictures] showed . . . pubic hair and others

[9]See p. 796.

#5. On June 12, 1967, the court reaffirmed these holdings by reversing, on the authority of *Sunshine Book Co.*, a Virginia judgment involving similar material. (*Rosenbloom* v. *Virginia* (1967) 388 U.S. 450 [18 L.Ed.2d 1312, 87 S.Ct. 2095] (per curiam).) Even more recently, the United States Supreme Court has reversed decisions of the federal circuit courts which held that magazines containing pictures of nude males and females focusing on the genitalia were obscene. Indeed, one of the magazines there involved is the same as that which is now before us ("International Nudist Sun"), although we deal with a different issue of it. (*Central Magazine Sales, Ltd.* v. *United States* (1967) 389 U.S. 50 [19 L.Ed.2d 49, 88 S.Ct. 235], reversing per curiam *United States* v. *392 Copies of Magazine Entitled "Exclusive"* (4th Cir. 1967) 373 F.2d 633; *Potomac News Co.* v. *United States* (1967) 389 U.S. 47 [19 L.Ed.2d 46, 88 S.Ct. 233], reversing per curiam *United States* v. *56 Cartons Containing 19,500 Copies of Magazine* (4th Cir. 1967) 373 F.2d 635.)

Having examined INS #5 in light of these decisions, we can reach only one conclusion: Given the materials to which the Supreme Court has accorded constitutional protection, we cannot withhold such protection here. Accordingly, we must sustain the trial court's ruling that the magazine is not obscene.

The United States Supreme Court has wisely recognized that ultimately the public taste must determine that which is offensive to it and that which is not; a public taste that is sophisticated and mature will reject the offensive and the dull; it will in its own good sense discard the tawdry, and

---

suggested what appeared to be a semi-erect penis . . . ; others showed male models reclining with their legs . . . spread wide apart . . . ." (370 U.S. at p. 490, fn. 13 [8 L.Ed.2d at p. 648].) The court's "own independent examination of the magazines" led it "to conclude that the most that can be said of them is that they are dismally unpleasant, uncouth, and tawdry. But this is not enough to make them 'obscene.'" (*Id.*, at pp. 489-490 [8 L.Ed.2d at pp. 647-648].) Only Justice Clark dissented.

[9]The District Court in the *Sunshine Book* case, for example, provided a detailed description of a photograph of an "exceedingly obese" woman with "large elephantine breasts that hang from her shoulder to her waist." In the court's words, the pubic "hair extends outwardly virtually to the hip bone [and] the hair line instead of being straight is . . . scalloped or in a half-moon shape, which makes the woman grotesque, vile, filthy. . . ." (128 F.Supp. at p. 572.) In another picture, "the pubic hair is matted; the overall [effect] is one of vulgarity, filth, obscenity and dirt." (*Ibid.*) Although another photograph displayed the labia majora, the court thought them "diminutive and juvenile" and therefore "not obscene." (*Id.*, at p. 571.)

once having done so, the tawdry will disappear because its production and distribution will not be profitable. Understandably, such maturity does not come quickly or easily, and, in a time when the strictures of Victorianism have been replaced by wide swings of extremism, it seems hopelessly remote.

■ Yet this court is bound, of course, by the decisions of the United States Supreme Court. That court has imposed its prohibitions only at the outer limits of the area of publication, leaving to the public the task of voluntarily casting out the offensive. That court has held that the representation of the nude human form in a nonsexual context is not obscene. The Supreme Court has decided that the judiciary cannot engage in the task of placing legal fig leaves upon variegated presentations of the human figure. That court has told us that no matter how ugly or repulsive the presentation, we are not to hold nudity, absent a sexual activity, to be obscene. In the materials before us we find some of the poses of the subjects to be inexcusably repulsive, and we trust that a discerning public will discard and reject them. But the decisions of the United States Supreme Court tell us that the task of rejection lies not with us but with the public.

The judgment is affirmed.

Traynor, C. J., McComb, J., Peters, J., Mosk, J., and Sullivan, J., concurred.

BURKE, J.—I dissent. The pseudo-nudist cult magazine, which is the subject of this action, flagrantly fails to pass any one of the tests adopted by the United States Supreme Court and more recently incorporated in the laws of this state by the Legislature.

Taken as a whole, the predominant appeal is to prurient interest which goes substantially beyond customary limits of candor and the magazine is utterly without redeeming social importance. According to small print at the bottom of the cover it purports to be "an educational, cultural, and scientific publication, for the advancement of nudism," and briefly included among its pages of pictures is editorial material replete with pious platitudes about the beneficial aspects of sunbathing and the freedom and relaxation to be gained by families' participation in outdoor games and activities.[1] But

---

[1] To be more specific, the format of the magazine, which terms itself "Collectors Issue," is this:

It contains 64 pages measuring 8½ inches by 11 inches. On both front

the statement of such a purpose and the inclusion of such material belie its all too obvious purpose of appealing to prurient interest. The pages of this magazine contain no pictures of families engaging in outdoor games and activities. In fact, no children are portrayed, and the only suggestion of games is the inclusion of studio props which, like the text employed, are clearly designed as window dressing. The price of the magazine, $4.00, and the warning on its cover, ''For Adults Only,'' are also indicative of what is the real purpose and interest of its purveyors. Sensual detail in the pictures is emphasized to a degree beyond contemporary or customary limits of candor, and the prurient emphasis on genitalia (often purposely denuded of all natural cover) belies the purveyors' purported interest in advancing the virtues of nudism.

Despite the ever-increasing evidence of declining moral standards, often expressed in terms of freedom from prudery, there are countless thousands of families in these United States striving to raise their children with a sense of morality and decency. The courts constitute the last bastion to which these families can look to save them from being engulfed by a flood of pornographic material. Conceivably, neither the Legislature nor the courts can reverse the unfortunate trend, but we can establish and apply rational limits. This our state Legislature has done in adopting the definition of obscenity as set forth in the recent United States Supreme Court decisions. If, as here, ''redeeming social importance'' can be ascribed to this obscene publication by the mere injection of scanty editorial material unrelated to the predominant purpose, then truly justice is blind.

I would reverse the judgment.

Appellant's petition for a rehearing was denied December 20, 1967. Burke, J., was of the opinion that the petition should be granted.

---

and back covers are photographs of nude adults with genitalia concealed by prominent white pasted-on patches.

On the inside pages there is a total of *78* pictures, all of nude adults. In *74* of such pictures the genitalia are emphasized.

Such textual material as appears is arranged in columns, and each page of the magazine contains sufficient space for two full columns 9½ inches long, plus wide side margins. Thus the 60 inside pages (omitting outside and inside of front and back cover pages) will accommodate 1,140 inches of text. The text which the magazine contains actually adds up to 85 inches, measuring generously. The other 1,055 inches of space are devoted to the 78 pictures described above.