[Crim. No. 15687.   Second Dist., Div. Four.   Dec. 23, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN LEWIS ROSAKOS, Defendant and Appellant.

Burton Marks for Defendant and Appellant.

Roger Arnebergh, City Attorney, Philip E. Grey, Assistant City Attorney, and Samuel C. Pelter, Deputy City Attorney, for Plaintiff and Respondent.

WAPNER, J. pro tem.*—In the Municipal Court of the Los Angeles Judicial District, appellant was charged with multiple violations of Penal Code section 311.2 which proscribes the possession of obscene matter for distribution in this state.[1] The alleged obscene material consisted of eight photographs which were purchased from appellant by an undercover agent of the Los Angeles Police Department and are the basis of count VII, and a movie film seized following appellant's arrest which is the basis of count I.

Appellant's motion to suppress under Penal Code section 1538.5 was denied. Following the hearing upon this motion, appellant with leave of court withdrew his plea of not guilty and entered a plea of guilty to count I only. As to count VII appellant waived his right to a jury and it was stipulated that the cause be submitted upon the arrest report and the eight photographs. Appellant also waived confrontation of any additional witnesses and right to cross-examination of witnesses with regard to count VII. Appellant was convicted upon count VII and on May 3, 1968, was sentenced upon counts I and VII, the remaining counts being dismissed.

On appeal, the Appellate Department of the Superior Court for Los Angeles County reversed the judgment as to count I, holding that the film was illegally seized (*Flack* v. *Municipal Court*, 66 Cal.2d 981 [59 Cal.Rptr. 872, 429 P.2d 192]), and affirmed the judgment on count VII.

We are concerned here with count VII only. As to that count it was determined upon appeal that the photographs were not obscene per se but that "the evidence, consisting of not only the exhibits but also the surrounding circumstances and conversations was sufficient." The court found that count VII was based upon material purchased following a conversation with the appellant, and in its decision states: "The pictures go far beyond the usual nude pictures of girls and appear to meet the Roth tests of obscenity. However, they

---

*Assigned by the Chairman of the Judicial Council.

[1]Penal Code section 311.2: "Every person who knowingly: sends or causes to be sent, or brings or causes to be brought, into this state for sale or distribution, or in this state prepares, publishes, prints, exhibits, distributes, or offers to distribute, or has in his possession with intent to distribute or to exhibit or offer to distribute, any obscene matter is guilty of a misdemeanor."

do not portray actual sexual acts, and if the issue before us were whether they are obscene *per se* we would be bound to reverse upon the authority of *People* v. *Noroff* [1967] 67 Cal. 2d 791 [63 Cal.Rptr. 575, 433 P.2d 479]. However, our case is factually different from that case. It is before us on a record showing the actual circumstances and conversations surrounding the sale.''

What then were the actual circumstances and conversations surrounding the sale? The record discloses that a police officer went to a newsstand where appellant was standing behind a counter. The officer began viewing pictures depicting nude males and females which were on display in the glass counter. About one minute later appellant stated to the officer: ''Hey, do you want to buy some really good pictures.'' The officer replied: ''Yeah, let me see.'' Appellant bent over and pulled a package from the shelf below the cash register and handed it to the officer and said: ''Don't let anyone see these.''

The pictures depicted a semi-nude female posing in such a manner as to show her breasts and vaginal area. These pictures would seem to be quite similar to those described in *People* v. *Noroff, supra,* where at page 794, the court says: ''The publication admittedly makes no effort to conceal either male or female genitals, and several of the poses seem contrived to preserve genital exposure at the expense of aesthetic considerations.''

We quote the concluding paragraph of *Noroff, supra,* at page 797, which is persuasive and binding upon this court: ''Yet this court is bound, of course, by the decisions of the United States Supreme Court. That court has imposed its prohibitions only at the outer limits of the area of publication, leaving to the public the task of voluntarily casting out the offensive. That court has held that the representation of the nude human form in a nonsexual context is not obscene. The Supreme Court has decided that the judiciary cannot engage in the task of placing legal fig leaves upon variegated presentations of the human figure. That court has told us that no matter how ugly or repulsive the presentation, we are not to hold nudity, absent a sexual activity, to be obscene. In the materials before us we find some of the poses of the subjects to be inexcusably repulsive, and we trust that a discerning public will discard and reject them. But the decisions of the United States Supreme Court tell us that the task of rejection lies not with us but with the public.''

Having thus found that the pictures in question are not

obscene per se can they be made so by the seller's "pitch" and "come-on" as hereinabove related? We hold they cannot. The seller's statement certainly cannot make that which is not obscene, obscene.

This case must be reversed for a second reason which is the holding in *In re Giannini* 69 Cal.2d 563 [72 Cal.Rptr. 655, 446 P.2d 535].

In that case the court was dealing with violations of Penal Code section 314, subdivision 1, and Penal Code section 647, subdivision (a). The alleged offenses occurred in the presentation of a dance before an audience. The court in that case affords the dance First Amendment protection unless the dance is obscene. In order to determine whether or not the dance was obscene the court holds at page 573, ". . . a finding of offensiveness to the accepted community standards of decency forms a prerequisite to a conclusion of obscenity." and the court further states at pages 574-575: "Relying principally on the well established doctrine that jurors should not be endowed with the prerogative of imposing their own personal standards as the test of criminality of conduct, we hold that expert testimony should be introduced to establish community standards. We cannot assume that jurors in themselves necessarily express or reflect community standards; we must achieve so far as possible the application of an objective, rather than a subjective, determination of community standards."

In the case at bar no evidence of community standards was introduced. We therefore hold that the evidence is insufficient on the present record to sustain the conviction as to count VII.

The judgment is reversed.

Files, P. J., and Kingsley, J., concurred.


Respondent's petition for a hearing by the Supreme Court was denied February 26, 1969. McComb, J., and Burke, J., were of the opinion that the petition should be granted.