William E. Ringel, J.
The defendants, charged with a violation of the obscenity law in that they did knowingly sell various allegedly obscene magazines to undercover policemen (Penal Law, § 235.05), move to dismiss the complaints against them on the ground that the subject matter of each complaint is constitutionally protected under the First Amendment to the United States Constitution and is not obscene as a matter of law. Each defendant now before the court, 12 in all, although separately charged, has been joined by consent of the parties for the purposes of this motion.
The People concede that none of these cases involve sales to minors (People v. Tannenbaum, 18 N Y 2d 268 [1966], app. dsmd. 388 U. S. 439, rehearing den. 389 U. S. 892; former Penal Law, § 1141; revised Penal Law, art. 235, see, e.g., §§ 235.20, 235.21; Prince v. Massachusetts, 321 U. S. 158 [1944]), or pandering, ‘ ‘ which the Court found significant in Ginsburg v. United States, 383 U. S. 463 ” (Redrup v. New York, 386 U. S. 767, 769 [1967]), or “ any suggestion of an assault upon indi *906 vidual privacy by publication. in a manner so obtrusive as to make it impossible for an unwilling individual to avoid exposure to it ” (Redrup v. New York, supra, p. 769; cf. Breard v. Alexandria, 341 U. S. 622 [1951]; Public Utilities Comm. v. Pollak, 343 U. S. 451 [1952]).
The magazines in question, entitled Daisy, Good Gals, Bunny, Sissy, Countess, Exciting and Cover Girl, contain single photographs of females in various poses and stages of nudity, some provocative, prominently displaying the vaginal aperture. The People concede that no sexual activity, e.g., sexual intercourse, sodomy or masturbation, is depicted, and defendants concede that the magazines were seized pursuant to lawful search warrants (cf. People v. Kozak, 56 Misc 2d 337). Each defendant has pleaded not guilty.
Thus, the sole issue to be determined by the court is whether the distribution of these magazines is protected by the First and Fourteenth Amendments.
Since this question is a question of law, it is to be determined by the court (Jacobellis v. Ohio, 378 U. S. 184,188 [1964]; United States v. 1 Am Curious-Yellow, 404 F. 2d 196), and thus, the motion is properly before the court (People v. Noroff, 67 Cal. 2d 791 [1967]; see, also, Model Penal Code, § 207.10, Comment 13.)
Freedom of the press, guaranteed by the First Amendment and absorbed into the Fourteenth Amendment (Gitlow v. New York, 268 U. S. 652 [1925]), does not extend to obscene material. The reason for this rule is based on the holding that obscene material is contraband and as such it enjoys no special constitutional protection (Roth. v. United States, 354 U. S. 476, 485 [1957]).
Accordingly, if the publications in question are not obscene, no crime is charged and the motion must be granted.
Emotionalism, misconceptions and attempts to define 1 ‘ obscenity ” have often led to confusion. (See People v. Marzano, 31 AD 2d52, 53.)
There are two judicially approved tests for obscenity — the Federal test, and the New York State test.
A. THE FEDERAL TEST
The Federal test, sometimes called the “ prurient interest ” or “ Both ” test (Roth v. United States, supra) applied in the Federal courts, fixes the minimum standards that a State may employ in judging publications for obscenity.
This test provided ‘ ‘ whether to the average person, applying contemporary community standards, the dominant theme of the *907 material taken as a whole appeals to prurient interests ” (Roth, supra, p. 489).
The test was amended in 1966 in three cases: Ginzburg v. United States (383 U. S. 463, supra), Mishkin v. New York (383 U. S. 502) and the “Fanny Hill” case, Memoirs v. Massachusetts (383 U. S. 413).
In Ginzburg, the court held that when an objective examination of the material in question fails to establish obscenity, then the court may examine into the publisher’s intent and in that connection may consider the advertising material he issued in connection with the material under review. If the publisher attempted to ‘ ‘ titillate ’ ’ the sexual interests of the public in an • effort to sell his product, then the courts may consider his advertising “ at its face value ” and declare the publication obscene.
In Mishkin, the court held that a publication aimed at deviant sexual groups is obscene if it appeals to the prurient interest of those groups.
In ‘1 Fanny Hill ’ ’ the court held under this definition, as elaborated in subsequent cases, three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is “ utterly without redeeming social value ” (supra, p. 418).
“ Fanny Hill ” thus modified Roth by requiring that a publication must be utterly without redeeming social value before it could be proscribed. Nevertheless, if the book was “ designed for and primarily disseminated to a clearly defined deviant sexual group, rather than the public at large,” it may likewise be proscribed (Mishkin, supra, p. 508).
The term ‘1 contemporary community standards ’ ’ must not be interpreted in a parochial sense but is equated with the contemporary community standards of the nation as a whole since the area of expression that is protected is governed by the Federal Constitution (Jacobellis v. Ohio, supra, p. 193)..
“Fanny Hill” was followed by Redrup v. New York (386 U. S. 767, supra). In effect, Redrup holds material to be obscene if it is hard-core pornography, and, in “ borderline ” cases, the publication may be proscribed if (a) it is sold to a minor in violation of some local statute (People v. Tannenbaum, 18 N Y 2d 268, supra; Prince v. Massachusetts, 321 U. S. 158, supra), or, (b) if it is pandered (Ginzburg v. United States, 383 U. S. 463, supra), or, (c) if it is foisted upon an unwilling public (Redrup, *908 supra; cf. Breard v. Alexandria, 341 U. S. 622, supra; Public Utilities Comm. v. Pollak, 343 U. S. 451, supra).
Any doubt .as to the meaning of Redrup is resolved in Central Mag. Sales v. United States (389 U. S. 50 [1967]). Central Sales involved a magazine called “ Exclusive ” which contained a collection of photographs of females in various stages of nudity, and some of which are posed in such a manner as “ to reveal the genital area in its entirety.” There was also some suggestion of masochism in some of the photographs. Although the trial court found the magazine to be obscene (253 F. Supp. 485), which determination was affirmed on appeal (373 F. 2d 633), nevertheless, the United States Supreme Court reversed without opinion, Per Curiam, citing only Redrup.
In many other recent cases the United States Supreme Court has likewise summarily reversed, without opinion, Federal and. State court findings of obscenity as to magazines showing photographs of nude or semi-nude males or females which focused on the genitalia. In each of these cases Redrup was the authority cited. (Potomac News Co. v. United States, 389 U. S. 47, [1967]; Conner v. City of Hammond, 389 U. S. 48 [1967]; Books v. United States, 388 U. S. 449 [1967].) (See, also, United States v. 4,400 Copies etc., 276 F. Supp. 902 [1967], in which the Maryland United States District Court sat en banc.)
The term ‘ ‘ hard-core ’ ’ pornography is an imprecise term. In his dissent in Jacobellis v. Ohio (supra, p. 197) Mr. Justice Stewart stated ‘ ‘ perhaps I could never succeed in intelligibly ’ ’ defining that term, “ but I know it when I see it.” However, in a subsequent dissenting opinion (Ginsburg v. United States, supra, p. 499, n. 3) he set forth what he meant by that term: “ Such materials include photographs, both still and motion picture, with no pretense of artistic value, graphically depicting acts of sexual intercourse, including various acts of sodomy and sadism, and sometimes involving several participants in scenes of orgy-like character. They also include strips of drawings in comic-book format grossly depicting similar activities in an exaggerated fashion.”
B. THE HEW YORK TEST
In interpreting section 1141 of the former New York Penal Law, the New York Court of Appeals held that it “ should apply only to what may properly be termed ‘ hard-core pornography ’ ”. (People v. Richmond County News, 9 N Y 2d 578, 586 [1961].) Although many people may know it when they see it, the term was never defined by the court other than to say that the test “may be applied objectively ”. (Richmond County *909 News, p. 586.) The test is far less stringent than the Federal test which, as noted above, is subjective and consists of the prurient appeal — patently offensive — utterly without redeeming social value, elements (Roth, supra; “ Fanny Hill,” supra; McKinney’s Cons. Laws of N. Y., Book 39, Part 2, Penal Law, Practice Commentary, p. 89).
However, by enacting section 235.00 of the revised Penal Law the New York State Legislature has now adopted the Federal definition of obscenity as expressed in “ Fanny Hill,” (supra), thus eliminating the single hard-core pornography test laid down in Richmond County News (supra).
Under either test, if the material is hard-core pornography, it is not protected. (Redrup, supra; “ Fanny Hill,” supra.) In this court’s view, pictures of nudes, absent any indication of sexual activity, are not hard-core (see Ginzburg v. United States, supra, p. 499, n. 3, [dissent, Stewart, J.]).
Although People v. G. I. Distrs. (20 N Y 2d 104) was decided under section 1141 of the former Penal Law, the definition of hard-core indicated therein is significant. “ Photographs of similar sexual activity between male and female, without social justification or excuse, would be equally obscene ” (p. 107; emphasis added). In People v. Noroff (67 Cal. 2d 791, supra), the Supreme Court of California found the publication International Nudist Sun (vol. 1, No. 5) constitutionally protected because “ none of the photographs display any form of sexual activity ” (emphasis is the court’s, p. 794). In the same opinion (p. 577, n. 6) the court noted, “ The graphic depiction of such sexual activity seems to be the distinguishing feature of the only materials which the United States Supreme Court has ever ruled obscene.”
Note also, that in his dissent in G. I. Distrs. (supra, p. 108) Chief Judge Fuld voted to reverse, inter alia, because ‘ ‘ there is neither indecent exposure nor portrayal of a consummated lewd act ”.
Addressing ourselves to the “ Fanny Hill ” test, we conclude that the Federal and New York State tests are now the same. (McKinney’s Cons. Laws of N. Y., Book 39, Part 2, Penal Law [1968], Commission Staff Notes, art. 235, § 235.00.) This means that Redrup (supra) and “ Fanny Hill ” (supra) are controlling here.
“ Sex and obscenity are not synonymous ” (Roth v. United States, supra, p. 487). Accordingly, absent “ a claim that the statute in question reflected a specific- and limited state concern for juveniles. See Prince v. Massachusetts, 321 U. S. 158; cf. Butler v. Michigan, 352 U. S. 380 ” or “ any suggestion of an *910 assault upon individual privacy by publication in a manner so obtrusive as to make it impossible for an unwilling individual to avoid exposure to it. Cf. Breard v. Alexandria, 341 U. S. 622 ” or ‘ ‘ evidence of the sort of ‘ pandering ’ which the Court found significant in Ginzburg v. United States, 383 U. S. 463 ” (Redrup v. New York, 386 U. S. 767, 769, supra), it must be concluded that the distribution of the material in question is protected by the First and Fourteenth Amendments.
It is to be noted that many courts have held to the same effect with respect to similar or identical photographs as are before the court. (See People v. Liebowitz, N. Y. L. J., Dec. 22, 1967, p. 12, col. 5 ; People v. Sessa, N. Y. L. J., Jan. 3,1969, p. 2, col. 2; United States v. Three Packages, etc., Cent. Dist. of Cal., Feb. 20,196-8; United States v. 127,295 Copies etc., 295 F. Supp. 1186 [both of the latter involving the magazines “ Bunny ” and “ Daisy ”, supra].)
What may be “ clearly obscene in the ordinary sense of the word ” does not necessarily make a publication obscene as a matter of law (United States v. 4,400 Copies etc., 276 F. Supp. 902, 903, supra). It is to be observed that in this case the court reviewed photographs of women in various suggestive poses which exposed to open view their breasts and vaginas and were ‘ ‘ lewder than any magazines heretofore considered ’ ’ by -that court.
Note, too, that the United States Supreme Court has held, in a case where the defendants conceded that magazines of nude males were without literary merit and were prepared for homosexuals, that the magazines were not legally obscene, as there is an absence of ‘1 patent offensiveness ” or “ indecency ’ ’ on the face of the photographs so as to affront current community standards of decency (Manual Enterprises v. Day, 370 U. S. 478, 482 [1962]; cf. Mishkin v. New York, 383 U. S. 502, supra).
In summary, the following conclusions may be drawn from the various decisions:
(1) A State may constitutionally establish two standards of obscenity — - one for juveniles and one for adults. (Redrup, supra; People v. Tannenbaum, supra.)
(2) The Federal and New York State tests for obscenity are identical.
(3) Obscene material enjoys no constitutional protection. It is contraband. (Roth v. United States, supra.)
(4) Hard-core pornography is obscene under both Federal and New York law. (Redrup, supra; People v. Noroff, supra.)
*911 (5) Motion pictures, like books, are entitled to the protection of the First Amendment, and the threefold test stated in ‘ ‘ Fanny Hill ” is applicable to both. (I Am Curious-Yellow, supra.)
(6) The “ prurient appeal ” test of “Fanny Hill ” includes prurient appeal to sexually deviant groups. (Mishkin v. New York, supra.)
Photographs of nudes depicting sexual activity are “ hardcore ” (G.I. Distrs., supra).
Sex and obscenity are not synonymous. Thus, the distribution of photographs depicting genitalia (the so-called close cases; see Ginzburg, supra, p. 474), which are not “ hard-core,” is protected by the First and Fourteenth Amendments, unless (1) they are distributed to juveniles in violation of some statute, or (2) they are foisted upon an unwilling public in violation of one’s right to privacy, or (3) they are “ pandered.” (Redrup, supra.)
Also, in close cases, the publisher’s advertising ‘ ‘ blurbs ’’may be considered in determining the question of obscenity (Ginzburg v. United States, supra).
In our view, the term “ close cases ” refers to material which, on objective examination, standing alone, is not patently offensive, i.e., hard-core pornography (Richmond County News, supra). More particularly, the term applies to that material in which some, but not all of the three elements of the three-fold test enunciated in “ Fanny Hill ” are present. (I Am Curious-Yellow, supra, p. 200, concurring opn., Friendly, J.)
We conclude, therefore, that while “ hard-core pornography ” is obscene per se and does not enjoy any constitutional protection (Roth, supra), “ close cases ” are to be adjudged as either obscene vel non, depending upon whether the material violates the tests pronounced in Redrup (supra).
This determination is supported by the decision in I Am Curious-Yellow (supra). That case concerned the showing of a motion picture which depicted scenes of a young girl and her lover nude, sexual intercourse, and oral-genital activity. Although the court found (p. 198) that “ the sexual content of the film is presented with greater explicitness than has been seen in any other film produced for general viewing,” [yet] taken as a whole, it was an artistic presentation of a young girl’s search for identity. The court thereupon concluded that, taken as a whole, the film does not appeal ‘1 to prurient interest, in sex,” and “is not utterly without redeeming social value.” Thus, “ it falls within the ambit of intellectual effort that the first amendment was designed to protect.” (pp. 199-200). Accordingly, absent the existence of two of the elements of the *912 threefold test enunciated in “ Fanny Hill ” (supra), the picture was not obscene.
Apparently mindful of Redrup (supra), the court warned the importers, distributors and exhibitors that if they failed to exclude minors from the audience they would be subject to attack under Ginsberg v. New York (390 U. S. 629 [1968]), and, if they “ pandered ” the film, then Ginzburg v. United States (383 U. S. 463 [1966]), would be applicable. (Concurring opn. in United States v. I Am Curious-Yellow, 404 F. 2d 196, 200, supra, Friendly, J.)
The rule enunciated in Redrup (supra) is consonant with the First and Fourteenth Amendments in that it protects the average normal adult in his right to read, view and hear what he pleases. Any other rule would reduce the rights of adults to read, view and hear only what is fit for children (Butler v. Michigan [1957], 352 U. S. 380).
The material before the court is coarse, puerile, offensive and distasteful. But these elements alone do no render it obscene under the law or prescribable.
‘ ‘ The price of freedom of religion or of speech or of the press is that we must put up with, and even pay for, a good deal of rubbish.” (United States v. Ballard, 322 U. S. 78, 95.)
In view of the authorities cited herein, defendants’ motions to dismiss, as a matter of law, are granted.