Ronda COPLAND and Joseph DiGiraloma, also known as "Roma", Plaintiffs,

v.

Thomas M. O'CONNOR, Individually and as City Attorney of the City and County of San Francisco, State of California; Thomas Cahill, Chief of Police of the City and County of San Francisco, State of California, Defendants.

No. C69–390.

United States District Court
N. D. California.

Nov. 26, 1969.

Belli, Ashe, Ellison, Choulos & Lieff, by Vasilios B. Choulos, San Francisco, Cal., for plaintiffs.

Thomas M. O'Connor, City Atty., H. LeRoy Cannon, Deputy City Atty., San Francisco, Cal., for defendants.

## MEMORANDUM OPINION AND ORDER

GEORGE B. HARRIS, Chief Judge.

### Facts

On October 20, 1969, the alleged play "Oh! Calcutta!" officially opened in San Francisco. The play is made up of a series of eleven erotic vignettes, each written by a different author who is not identified. One of these vignettes, the subject of the suit before this court, is entitled "Was It Good For You Too?". In this skit, an actress and actor, both nude, engage in either simulated or actual sexual intercourse on the stage in full view of the audience.

On October 28, 1969 the performance was viewed in entirety by the Honorable Joseph G. Kennedy, Presiding Judge of the San Francisco Municipal Court, who was accompanied by the arresting officer. After the performance Judge Kennedy issued a warrant for the arrest of the said actor and actress, plaintiffs in this suit, charging violation of California Penal Code Section 647(a).[1] The warrant was supported by a descriptive affidavit of the arresting officer who also viewed the performance, and by a series of photographs which clearly depict the offending portions of the alleged theatrical production. Pursuant to this warrant,

the San Francisco Police Department arrested the actors and took them to the City Prison where they were booked and released on bail.

After each of the following five performances, the evenings of October 30, October 31, November 1 and November 2, the San Francisco Police Department issued citations for violation of the same section. Then, during the intermission of the performance on November 4, the actors were again arrested and taken to City Prison for booking.

Subsequent to the second arrest, the vignette was eliminated from the play.

The actors appeared before the Honorable Gerald J. O'Gara, Judge of the Municipal Court, on November 10 and 12, 1969 to present a series of motions. These motions included consolidated demurrers to the charges, a motion to dismiss and a motion for pretrial judicial determination on the issue of obscenity. In support of their motion for pretrial hearing, counsel for the actors relied on the California Supreme Court decision of Zeitlin v. Arnebergh, 59 Cal.2d 901, 31 Cal.Rptr. 800, 383 P.2d 152, 10 A.L.R.3d 707 (1963), which held that a book-seller was entitled to seek declaratory relief against the City Attorney declaring the book "Tropic of Cancer" not obscene.

Judge O'Gara overruled the consolidated demurrer, denied the motion to dismiss and denied the motion for a pretrial hearing on the obscenity issue. The trial court held that the actions of persons on stage and the relation of such to community standards is triable only by a jury.[2]

The case is now scheduled for trial in San Francisco Municipal Court in the month of February, 1970.

The plaintiffs instituted this suit alleging, pursuant to Title 42 U.S.C.A. Section 1983, that their First Amendment rights have been abridged by the actions of the San Francisco Police Department. Spe-

---

1. California Penal Code Section 647: "Every person who commits any of the following acts shall be guilty of disorderly conduct, a misdemeanor:
   (a) Who solicits anyone to engage in or who engages in lewd or dissolute con- duct in any public place or in any place open to the public or exposed to public view."

2. See Municipal Court Tr. p. 24–26.

cifically, the plaintiffs seek a temporary restraining order against the San Francisco Police Department from making any further arrests of the plaintiffs under Section 647(a); a permanent injunction against the City Attorney from enforcement of the statute in Municipal Court; and a declaration by a three judge court that California Penal Code Section 647 (a) is unconstitutional.

On November 20, 1969 the parties appeared before this Court, plaintiffs asking for a temporary restraining order and the defendants seeking a dismissal or, in the alternative, summary judgment.

### Discussion

■ The federal courts have long been aware of the delicate balance which a dual judicial system presents. Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Such a system demands cooperation, not jealous competition, to function smoothly and efficiently. Pursuant to this delicate balance, the federal courts have followed, and continue to follow, what has come to be known as the "Abstention Doctrine." [3] This doctrine, simply stated, dictates that the federal courts will not enjoin or otherwise interfere with a state criminal prosecution absent certain compelling factors. Judicial self-restraint is the operative feature.

■ The case of Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed. 2d 22 (1965), is the leading case in the area of abstention. Certain definite criteria are established which must be demonstrated before the federal courts will

assume jurisdiction: (1) that the statute upon which the prosecution relies is, due to the overbreadth or vagueness, unconstitutional on its face; (2) that there has been bad faith enforcement of such a statute; (3) that the statute has a chilling effect on the exercise of First Amendment rights and (4) that there be no adequate remedy in the state judicial system to delimit and enforce the constitutional rights of the aggrieved parties.

■■ In the case at bar, *there is no substantial question concerning the constitutionality of the statute in question.*[4] The terms "lewd and dissolute conduct" as used in Section 647(a) has been restricted by the California Supreme Court to "obscene" conduct which is not protected by the First Amendment. In re Giannini, 69 Cal.2d 563, 72 Cal.Rptr. 655, 446 P.2d 535 (1968).

■ Nor does this Court find that there was bad faith enforcement of California Penal Code Section 647(a). This alleged play was viewed in its entirety by Municipal Judge Kennedy who duly determined that there was probable cause to believe that a violation of Section 647 (a) had taken place. The police apparently were acting in good faith pursuant to this warrant in making the arrests and issuing the citations for successive violations of the statute.

■ Most importantly, the plaintiffs have an adequate remedy in the California courts to protect their rights.[5] Counsel for plaintiffs conceded that a remedy before the California Supreme Court was available and that the United States District Court was chosen as an alternative.[6] *Dombrowski* offers no such choice.

---

3. Cf. Comment, Federal Intrusions in State Criminal Proceedings—New Approaches in the Abstention Doctrine, 3 U.S.F. Law Rev. 450 (1969).

4. Alberts v. California, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), held the California Obscenity Statute, California Penal Code Section 311, to be constitutional. Since Section 647(a) has been restricted to "obscenity," the same rationale should apply.

5. Zeitlin v. Arnebergh, 59 Cal.2d 901, 907, 31 Cal.Rptr. 800, 383 P.2d 152 (1963); In re Giannini, 69 Cal.2d 563, 576, 72 Cal.Rptr. 655, 446 P.2d 535 (1968).

6. "The Court: Have you made application to the Supreme Court of California?
   Mr. Choulos: I have not yet. I have chosen this as an alternative to that." (Tr. p. 16, 1. 14–17)

The federal courts should not, in this instance, intrude upon what is essentially state jurisdiction. This is especially true in light of the vigorous protection afforded First Amendment rights by the California Supreme Court.[7]

Moreover, certain statements by plaintiffs' counsel were, in the definition of two California cases, tantamount to concessions on the issue of obscenity.[8] In In re Panchot, 70 A.C. 109, 73 Cal.Rptr. 689, 448 P.2d 385 (1969), the California Supreme Court held that photographs of nude humans in a nonsexual context was not obscene. The Court pointed out, however, at page 111, 73 Cal.Rptr. at page 690, 448 P.2d at page 386, footnote 5, that *"Graphic depiction of sexual activity is the distinguishing feature of the only materials which the United States Supreme Court has ruled to be obscene."*[9] Also, Landau v. Fording, 245 Cal.App.2d 820, 54 Cal.Rptr. 177 (1966), affirmed per curiam at 388 U.S. 456, 87 S.Ct. 2109, 18 L.Ed.2d 1317 (1967), held that a certain movie owing to its graphic depiction of sexual activity, was obscene.

There is no substantial constitutional question in the challenge of Section 647 (a):[10]

The plaintiffs rely on Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed. 2d 542 (1969), in their argument that the statute is invalid. The *Stanley* case, holding private possession of obscene matter to be constitutionally protected clearly does not support plaintiffs' position. The statute in question applies only to places open to the public.

■ Since the constitutional issues raised are insubstantial, no three judge court is required, nor should one be convened. Wicks v. Southern Pacific Co., 231 F.2d 130, 134 (9th Cir., 1956), cert. denied Wicks v. Brotherhood of Maintenance, etc., Co., 351 U.S. 946, 76 S.Ct. 845, 100 L.Ed. 1471; Smith v. State of California, 336 F.2d 530, 534 (9th Cir., 1964).

---

7. The obscenity standards provided by the California Supreme Court and Court of Appeals are considerably more stringent than those of the United States Supreme Court. See: Zeitlin v. Arnebergh, 59 Cal.2d 901, 31 Cal.Rptr. 800, 383 P.2d 152 (1963); People v. Noroff, 67 Cal. 2d 791, 63 Cal.Rptr. 575, 433 P.2d 479 (1967); In re Giannini, 69 Cal.2d 563, 72 Cal.Rptr. 655, 446 P.2d 535 (1968); and also, see People v. Rosakos, 268 A.C.A. 534 74 Cal.Rptr. 34 (1968).

8. "The Court: The defendants, or respondents have an Exhibit 3, a series of photographs which I hand you. Have you seen them? Do you feel, Counsel, that the several photographs contain a fairly graphic portrayal of sexual activity taken as a composite?

Mr. Choulos: If you first—before I answer that, Your Honor, may I first say this seems to be—I have seen the play twice, but it seems to be a series of photographs of the entire play without reference to the so-called offensive segment.

The Court: Well, go over them and see if you find anything in there that would fit the question I have addressed to you.

Mr. Cannon: If Your Honor can't, I can tell him exactly which scenes these photographs apply to.

Mr. Choulos: Your Honor, there seem to be several here which, under—in the broadest sense, in the broadest sense there appears to be sexual activity.

The Court: In the broadest sense?

Mr. Choulos: I can't tell you. I don't know whether Your Honor is asking me whether there is foreplay involved in that sense, or whether there is actual sexual intercourse depicted in a photograph. I find two photographs in which a lady seems to be laying horizontally and a gentleman is on top of her. So I think in that sense my question—my answer is yes." (Tr. p. 23, l. 5–p. 24, l. 5)

9. People v. Climber, 271 A.C.A. 561, 76 Cal.Rptr. 382 (1969) cites the *Panchot* case for the proposititon that "To constitute obscenity under the rules established by the United States Supreme Court and the even more stringent requirements of our State Supreme Court the material must contain a graphic description of sexual activity." (p. 563, 76 Cal.Rptr. p. 383)

10. Supra, Footnote (4).

*Conclusion*

This Court hereby specially dismisses this suit as against defendant Thomas M. O'Connor, City Attorney. It has been conceded in open court that he is not a proper party.

As to the other defendants, for the reasons assigned above, the motion to dismiss is hereby granted.

Defendants may prepare an appropriate order.