**UNITED STATES of America, Plaintiff,**

v.

**William PINKUS, Defendant.**

**Cr. No. 5256.**

United States District Court, C. D. California.

Nov. 5, 1971.

Robert L. Meyer, U. S. Atty., Eric A. Nobles, Asst. U. S. Atty. (Chief of Criminal Division), Robert C. Bonner, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

Bernard Berkman, Cleveland, Ohio, Jeremiah Casselman, Beverly Hills, Cal., for defendant.

## MEMORANDUM OF DECISION AND ORDER

WILLIAM P. GRAY, District Judge.

The defendant is charged with thirteen counts of mailing obscene matter and mailing advertisements of obscene matter, in violation of 18 U.S.C. § 1461. The defendant has moved to dismiss the indictment, and such motion has been argued and submitted for decision. This court has determined that each count of the indictment must be dismissed because:

(1) The publications here concerned are concluded to be constitutionally protected, on the basis of a comparison of them with other publications that were the subjects of prosecutions in which convictions were reversed by the Supreme Court or the Court of Appeals.

■■ (2) Although, under Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966), pandering may be a factor that could render material obscene that would otherwise be constitutionally protected, a defendant is entitled to be charged with such pandering before it can be an element of his prosecution.

■ (3) It is the responsibility of the trial court to dismiss a prosecution if it concludes that, as a matter of law, the publications concerned are constitutionally protected.

■■ Count 1 of the indictment involves five magazines—"Epic 300," "Au Pair," "Doubles," "Vortex," and "United." Two of these magazines are solely devoted to pictures of nude women with their legs apart in contrived positions that accentuate the pubic area. The three other magazines are similar, except that the pictures contain one man and one woman. These nude couples usually are in sexually suggestive poses, again with the emphasis on the genitalia.

■ Count 2 involves, in part, a deck of playing cards embellished with photographs of nude women in the same types of poses just described. Counts 3

through 6 involve advertisements for nude books, nude films, paperback books on sexual subjects, and "girlie" playing cards. The government contends that the photographs in the advertisements are, in themselves, obscene. These photographs are either identical to the ones in the magazines or playing cards involved in Counts 1 and 2, or are quite similar. Counts 7 through 12 involve advertisements not alleged to be obscene in themselves but to contain information as to where obscene matter may be obtained.

These photographs in the magazines, playing cards, and advertisements all involve nude women or nude men and women in sexually suggestive poses, with the camera focusing on the pubic and rectal areas. In none of these photographs is any explicit sexual activity depicted.

In order to determine whether this material is obscene, this court has compared it with other material already reviewed by the Supreme Court. Such review includes photographs in magazines held not obscene in Bloss v. Dykema, 398 U.S. 278, 90 S.Ct. 1727, 26 L.Ed.2d 230 (1970), which the state court had aptly described as portraying nude females in a lurid, morbid or enticing manner. 17 Mich.App. 318, 169 N.W.2d 367 (1969). Also compared were the photographs held not obscene in Central Magazine Sales v. United States, 389 U.S. 50, 88 S.Ct. 235, 19 L.Ed.2d 49 (1967), reversing United States v. 392 Copies of Magazine Entitled "Exclusive", 373 F.2d 633 (4th Cir. 1967), and those held not obscene in Potomac News v. United States, 389 U.S. 47, 88 S.Ct. 233, 19 L.Ed.2d 46 (1967), reversing United States v. 56 Cartons Containing 19,500 Copies of Magazine Entitled "Hellenic Sun," 373 F.2d 635 (4th Cir. 1967). The Fourth Circuit referred to these materials as photographs of nude men and women in poses guaranteed to focus attention upon the pubic area.

The government has brought to this court's attention Miller v. United States, 431 F.2d 655 (9th Cir. 1970), which held

a magazine entitled "The Name is Bonnie" to be obscene. This magazine, like the others already described, consists of photographs of nude women in contrived positions emphasizing the female sex organs. The photographs in *Miller* are substantially the same as those here concerned, but they also cannot be distinguished from those in *Potomac News, Central Magazine Sales,* and Bloss v. Dykema. I feel bound by the rulings in those three cases, and accordingly hold that the magazines, playing cards and advertisements involved in this prosecution are not obscene.

■ Count 2 pertains in part, to an 8 millimeter film entitled "Love Kiss," which depicts a nude man and woman embracing and simulating sexual activity. As the title of the film implies, the couple spend a great deal of time kissing, and at no time is any sexual act graphically depicted. Count 13 involves three 8 millimeter films entitled "Lil," "Liza," and "Pat and Steve." The first two depict a nude woman moving and undulating in a sexually suggestive manner with the usual accent on the pubic and rectal regions. The third film depicts a nude man and woman embracing and simulating sexual activity in much the same manner as the film charged in Count 2. Again, in none of these films is a sexual act graphically depicted.

In determining whether these films are obscene, this court has viewed an 8 millimeter film entitled "B8" which was held not obscene in Pinkus v. Pitchess, 429 F.2d 416 (9th Cir. 1970). The Court of Appeals described that film as depicting a " * * * woman who, disrobed, feigns some type of sexual satisfaction which is self-induced." (Page 417).

Finally, the Supreme Court in Schackman v. California, 388 U.S. 454, 87 S.Ct. 2107, 18 L.Ed.2d 1316 (1967) reversed per curiam a conviction that involved a film described in Schackman v. Arnebergh, 258 F.Supp. 983 (C.D.Cal.1966) as consisting of a female model moving and undulating in a matter clearly indic-

ative of engaging in sexual activity, with the focus of the camera emphasizing the pubic and rectal regions.

The four films that the defendant here is charged with mailing are quite similar to, and no more objectionable than, those just described and held to be not obscene by the Supreme Court or the Court of Appeals. Thus, this court concludes that the films charged herein are not obscene.

The government contends that the decision in Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966), prevents this court from dismissing the prosecution here. The syllogism is that *Ginzburg* laid down the rule that in close cases evidence of pandering may be probative on the question of obscenity; that the evidence here will show that there was pandering; and that, therefore, the matter of obscenity necessarily becomes a jury question.

Of course, to whatever extent *Ginzburg* provides guidance that is relevant to the case at hand, this court is bound to follow it; and I have sought to study the opinion with this thought in mind. Although I acknowledge being troubled by several aspects of the decision, just as the dissenting justices were troubled, I have concluded that *Ginzburg* does not preclude the dismissal contemplated here, for reasons hereinafter discussed.

In the first place, the facts are significantly different. In *Ginzburg,* the defense contended that the accused materials were of cultural or scientific value or that they otherwise had "saving intellectual content." For example, according to Justice Brennan's opinion, speaking for the Court, it was claimed at the trial that The Housewife's Handbook on Selective Promiscuity would be found valuable by women as a marriage manual or as an aid to the sex education of their children. However, the record indicated that the defendant, in promoting the distribution of his publications, had gone out of his way to point up their erotic appeal, thus eliminating any doubt as to what the purchaser was being

asked to buy. The opinion suggested that " * * * the circumstances of presentation and dissemination of material are equally relevant to determining whether social importance claimed for material in the courtroom was, in the circumstances, pretense or reality— whether it was the basis upon which it was traded in the marketplace or a spurious claim for litigation purposes." (383 U.S. 463, 470, 86 S.Ct. 942, 947).

No such question arises here. The anatomy-revealing magazine photos and the sexually oriented antics of the "casts" in the motion pictures are in no sense ambiguous. They are what they are; and no claims or explanations that the defendant may have made in their promotion are needed to an understanding of their significance. As Justice Brennan said in *Ginzburg,* in most of the obscenity cases decided by the Court in recent years, " * * * it has regarded the materials as sufficient in themselves for the determination of the question." (383 U.S. 463, 465, 86 S.Ct. 942, 944). In this case, also, the materials, themselves, are sufficient for the determination of the question and, as hereinabove noted, when such materials are compared with those that the Supreme Court in other cases has deemed to be constitutionally protected, a similar conclusion is impelled.

In Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), Justice Harlan wrote a concurring and dissenting opinion in which he expressed the view that the question of whether a particular work is obscene " * * * involves not really an issue of fact but a question of constitutional *judgment* of the most sensitive and delicate kind." (354 U.S. 476, 498, 77 S.Ct. 1304, 1316). He added that federal courts should accept the responsibility of making their own independent judgment upon the character of the materials rather than " * * * rely on easy labeling and jury verdicts as a substitute for facing up to the tough individual problems of constitutional judgment involved in every obscenity case." (354 U.S. 476, 498, 77 S. Ct. 1304, 1316).

Also, in Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964), the opinion of the Court, speaking through Justice Brennan, emphasized the need for judicial determination of whether a particular work is obscene, as a question of constitutional law.

These authoritative expressions reenforce my own belief that it is the responsibility of a federal district judge to dismiss a prosecution for obscenity if he is satisfied that the subject materials are not obscene. It is also worthy of note that the Model Penal Code proposed by the American Law Institute imposes such an obligation on the trial court in precisely those terms. (Section 251.4 (4)).

There is a further reason why, even in light of *Ginzburg,* this indictment must be dismissed. As is hereinabove noted, the government contends that it has proof of pandering which might support a verdict of obscenity, even though the material concerned would be constitutionally protected but for such pandering. Under this hypothesis, the conduct that would convict the defendant would be the pandering. But the indictment does not charge the defendant with pandering.

Although in *Ginzburg,* the dissenting justices (particularly Justices Black and Stewart) contended that the majority opinion convicted the defendant of pandering even though he was not so charged, the majority opinion does not advert to this problem. In fact, the opinion of the Court early asserts that "In the present case, however, the prosecution charged the offense in the context of the circumstances of production, sale, and publicity * * *." 383 U.S. 463 at 465, 86 S.Ct. 942 at 944. That sentence might permit the inference that there was some contention made in the indictment with respect to pandering.

It is fundamental that a defendant cannot constitutionally be convicted of an offense not charged in the indict-

ment. Cole v. Arkansas, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948).

In People v. Noroff, 67 Cal.2d 791, 793, 63 Cal.Rptr. 575, 576, 433 P.2d 479, 480 (1967), the Supreme Court of California applied this principle to the very type of situation here concerned:

"We cannot accept the People's argument, advanced for the first time on appeal, that the trial court should have permitted the prosecution to go to the jury with evidence bearing on the defendant's 'pandering' of the magazine in question. First, the indictment did not charge the defendant with pandering; * * *."

In the absence of a much more direct mandate to the contrary than the possible inference to be derived from *Ginzburg*, I adhere to the principle that a person is entitled to be informed of what he is being prosecuted for having done. If proof of pandering is to make the difference as to obscenity, this defendant must first be charged in the indictment with such pandering.

Accordingly, the indictment and the prosecution are dismissed.