[Crim. No. 5978. Third Dist. Jan. 28, 1971.]

In re JOHN VAN GELDERN et al. on Habeas Corpus.

## COUNSEL

John van Geldern and James D. Reed, in pro. per., and William Gregory, under appointment by the Court of Appeal, for Petitioners.

Paul N. Halvonick as Amicus Curiae on behalf of Petitioners.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, Nelson P. Kempsky and Daniel J. Kremer, Deputy Attorneys General, for Respondent.

## OPINION

REGAN, J.—On September 2, 1970, petitioners John van Geldern, Jay B. Jones and James D. Reed, prison inmates in the lawful custody of the Department of Corrections at Folsom Prison, filed a petition for a writ of habeas corpus in the California Supreme Court, prepared in propria persona on behalf of themselves "and a class too numerous to mention." They challenge the application of prison regulations governing inmate purchase and receipt of books and periodicals. The Supreme Court issued an order to show cause, returnable before this court. Petitioner van Geldern has filed supplemental "briefs" and other documents since the Supreme Court issued its order, which, although constituting new matter, are related to the substance of the petition and will be considered by the court. Petitioners challenge regulations forbidding possession of hard-cover fiction,[1] "educational" books,[2] and a magazine entitled "Nudist Adventure."[3] Peti-

---

[1] Books written by James Gould Cozzens.

[2] Drawing books entitled "Female Figure Studies # 9, and Female Figure Studies # 10."

[3] At the time of order (August 1970), prison regulations prohibited the purchase of hard-cover fiction "of any kind." Under the former regulations paperbacks were available only through a designated magazine dealer from the inmate canteen. Prisoners were denied the right to purchase quality paperbacks through other retail channels. The request for the purchase of the figure studies was denied apparently without reason. The subscription to "Nudist Adventure" was placed and a copy of the magazine was sent through the United States mail to Folsom Prison. However, the "Folsom Magazine Committee" deemed the publication to be obscene under section 2600 of the Penal Code, holding as follows: ". . . taken as a whole the predominant appeal of the publication is to prurient interest; the magazine goes substantially beyond customary limits of candor in description or representation and is utterly without

tioners also question certain procedural regulations requiring that books must be obtained from an approved vendor or from the prison canteen.

In 1968 the Legislature amended section 2600 of the Penal Code, which relates to the suspension of civil rights of persons imprisoned in a state prison, by adding subdivision (4) so such persons will not be deprived of the right "To purchase, receive, and read any and all newspapers, periodicals, and books accepted for distribution by the United States Post Office. Pursuant to the provisions of this section, prison authorities shall have the authority to exclude obscene publications or writings, and mail containing information concerning where, how, or from whom such matter may be obtained; and any matter of a character tending to incite murder, arson, riot, violent racism, or any other form of violence; and any matter concerning gambling or a lottery. Nothing in this section shall be construed as limiting the right of prison authorities (i) to open and inspect any and all packages received by an inmate and (ii) to establish reasonable restrictions as to the number of newspapers, magazines, and books that the inmate may have in his cell or elsewhere in the prison at one time."

The Supreme Court in *In re Harrell* (1970) 2 Cal.3d 675, 703-704 [87 Cal.Rptr. 504, 470 P.2d 640], made an explicit declaration as to the meaning of the relevant portion of section 2600: "[T]he judgment of the Legislature expressed in section 2600 would seem to be that free access to all printed materials which are accepted for distribution by the United States Post Office—excepting those which are obscene or which tend to incite activities posing a threat to prison discipline—is more in accord with legitimate penal objectives than limited access according to the views of particular prison authorities on the rehabilitative effect of such materials. We do not consider this view to be wholly lacking in rational support. It may well be that even persons who have committed antisocial acts warranting their imprisonment may derive greater rehabilitative benefits from a relatively free access to the thoughts of all mankind as reflected in the published word than they would derive from a strictly controlled intellectual diet."

■ We hold the mandate of *Harrell* to be that hard-bound fiction books may be purchased and received by inmates subject only to the basic limitations set forth in section 2600.

In October of 1970, the authorities at Folsom Prison revised the regulations pertaining to purchase of books by inmates. These regulations guarantee inmates the right to receive all publications within the purview of

redeeming social importance." Accordingly, the prison authorities did not allow the inmate to have possession of the magazine, and retained it with his property until release from prison.

section 2600 and set forth the means for their acquisition. The new regulations are attached hereto as Appendix A, and we think they adequately cover this first contention.

In *Keefer* v. *Keefer* (1939) 31 Cal.App.2d 335, 337 [87 P.2d 856], the court there holds: "An appellate court will not review questions which are moot and which are only of academic importance. It will not undertake to determine abstract questions of law at the request of a party who shows that no substantial rights can be affected by the decision either way. (*Adams* v. *Prather,* 176 Cal. 164 [167 Pac. 867]; 2 Cal. Jur., § 472, p. 803." (And, see 3 Witkin, Cal. Procedure (1954) Appeal, § 70, p. 2227.)

■ The drawing books entitled "Female Figure Studies #9, and Female Figure Studies #10" are not before this court. From oral argument it appears these drawings are not within the proscription of section 2600 of the Penal Code. Furthermore, the holding in *Harrell, supra,* controls and the prison regulations concerning such publications have been revised to allow purchase and receipt thereof. This issue is moot and raises no issue on habeas corpus.

We now consider the right of petitioners to receive the magazine entitled "Nudist Adventure," declared by the Folsom Prison authorities to be an obscene publication under the prison authorities' power to exclude obscene publications as provided in section 2600 of the Penal Code. We note first that this court must make an independent examination of the whole record since the case involves the constitutional issue of free speech. (*Zeitlin* v. *Arnebergh* (1963) 59 Cal.2d 901, 909 [31 Cal.Rptr. 800, 383 P.2d 152, 10 A.L.R.3d 707].)

The magazine describes its purported purpose as "Our nudist trip into the sexual world of man . . . ." and presents the question "Is Sex Our New Religion?"[4]

The publication, in the main, shows closeup photos of male and female genitalia, outrageously provocative and in bad taste. Its distinguishing features are male and female copulation, females in poses simulating lesbian practices, males and females posing with tongues thrust close to the genitals of their partners. Other poses of the nude participants are difficult to describe but follow the publication's stated purpose.

In *A Book* v. *Attorney General* (1966) 383 U.S. 413 [16 L.Ed.2d 1,

---

[4]The text then announces:

" 'Let's screw!'

"It's the modern watchword, the battle cry of the sexual freedom generation. And all the participants seem to agree that the battle is indeed a pleasant one—and why not? The only casualties are a few messy sheets."

5-6, 86 S.Ct. 975] the court defines obscenity: ■ "We defined obscenity in Roth in the following terms: '[W]hether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to the prurient interest.' 354 U.S., at 489, 1 L.Ed.2d at 1509. Under this definition, as elaborated in subsequent cases, three elements must coalesce: It must be established that (a) the dominant theme of the material taken as a whole appeals to the prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value."

The Attorney General states that the definition of obscenity as contained in section 311 of the Penal Code is the standard to be applied. We need not pass on this contention since we think the controlling standard is that set forth in *Roth* as elaborated upon by subsequent Supreme Court cases. (See *In re Giannini* (1968) 69 Cal.2d 563, 573 [72 Cal.Rptr. 655, 446 P.2d 535]; *People* v. *Noroff* (1967) 67 Cal.2d 791, 794-795 [63 Cal.Rptr. 575, 433 P.2d 479]; cf. *In re Panchot* (1968) 70 Cal.2d 105, 108 [73 Cal. Rptr. 689, 448 P.2d 385]; in general, see Magrath, *The Obscenity Cases: Grapes of Roth,* 1966 Supreme Court Rev. 7, 69-77.)

■ Applying the definition set forth above, we find this magazine to be obscene within the meaning of section 2600 of the Penal Code. Its photographs, both in purpose and effect, are calculated to stimulate a predominantly sexual response which as a whole appeals to the prurient interest. It contains graphic depictions of sexual activity involving both heterosexual and homosexual conduct. The sexual activity in "Nudist Adventure" is explicit and blatant and goes beyond the customary limits of candor. In short, it is hard-core pornography in that it is deliberately designed to stimulate sexual feelings and act as an aphrodisiac. (See *People* v. *Noroff, supra,* 67 Cal.2d at pp. 794-795.) This is the dominant theme of the entire publication; and thus it does not fall within the ambit of intellectual effort that the First Amendment was designed to protect. (Cf. *United States* v. *A Motion Picture Film* (2d Cir. 1968) 404 F.2d 196, 199-200.) This magazine is utterly without redeeming social importance. (See Note 5 A.L.R.3d 1158 [Modern Concept of Obscenity].)

Six other magazines, the possession of which have been denied to petitioners, have been reviewed by the court. They bear the titles of "Togetherness," "Party Pair," "Jaybird Experiences," "Jaybird Journal," "Ups and Downs" and "Inscene." We find the photographs therein place them in the same category as "Nudist Adventure," and this court's holding as to these magazines is the same, namely, that they are hard-core pornography and constitute obscene matter.

■ There is also an additional ground for the prison authorities to exclude these magazines. Even a casual observer could detect that they portray explicit sexual activity and are extremely appealing to the libidinous impulses. They would tend to arouse and stimulate the sexual passions and desires of prisoners who have no outlet in normal heterosexual activity. These publications would tend to incite and aggravate homosexual activity within the prison. Homosexual activities invariably lead to rivalries among the inmates and create violence. (See Gagnon and Simon, *The Social Meaning of Prison Homosexuality* (Mar. 1968) 32 Fed. Prob. 23, 24-27; see also, Note, *The Problems of Modern Penology: Prison Life and Prisoners' Rights,* 53 Iowa L.Rev. 671, 697-698.) Thus, such publications not only fall within the obscene publication provision of section 2600, but are also of a character tending to incite violence within the prison.

■ Petitioners next question the prison regulation requiring that publications come from an approved source, i.e., that magazines and newspapers come directly from the publisher and that books be purchased from vendors through specific request. No grounds of objection are stated.[5]

These regulations are reasonable and proper; they insure against the importation of contraband into the prison and have been approved by the Supreme Court. (*In re Harrell, supra,* 2 Cal.3d at p. 698.)

Petitioner van Geldern in additional "briefs" has raised other contentions which were not before the Supreme Court when it issued its order to show cause. ■ He questions the following regulations: newspapers must be mailed "flat;" purchases of paperback books must be made through a specified vendor; trust office receives 10 percent of purchase price of softcover books to be placed in the Inmate Welfare Fund; publications are not acceptable.

We think all of these points, with the exception of the 10 percent charge, are adequately covered and disposed of in *Harrell, supra.*

We are concerned here not with the "dynamics of a free society" but with a penal institution, the fundamental aim of which is to rehabilitate prisoners through rendering them amenable to governance by rules. (See *In re Harrell, supra,* 2 Cal.3d at p. 693.) Such regulations are justified by valid institutional considerations (e.g., the detection of contraband). Nor do we think it unreasonable to charge a 10 percent fee for the handling of

---

[5]The instance cited by petitioners is moot. On August 27, 1970, a judge of the Sacramento County Superior Court filed a memorandum decision and order granting limited writ of habeas corpus. This order permitted an inmate to receive certain textbooks from his home. The ruling was expressly limited to the particular facts in that case.

soft-cover book purchases to defray added expense. In *Harrell,* the court states: "Section 2600 cannot be construed as a straightjacket limiting the ability of prison authorities to deal with institutional realities. Rather it is to be viewed as a prison 'bill of rights' setting forth certain fundamental guarantees which are to be protected against arbitrary infringement." (2 Cal. 3d at p. 698.) We find these additional contentions to be without merit.

The order to show cause is discharged and the petition for habeas corpus denied.

Friedman, Acting P. J., and Janes, J., concurred.

The application of petitioner van Geldern for a hearing by the Supreme Court was denied March 26, 1971. Peters, J., was of the opinion that the petition should be granted.

## APPENDIX A

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS
MEMORANDUM
To: All Concerned
FROM: Business Manager's Office

DATE: October 14, 1970
SUBJECT: Soft-backed Books—
Ordering Procedures

Effective November 1, 1970, inmates at Folsom State Prison will be able to purchase soft-backed books in accordance with the following procedures:

1. Purchases will be made by Special Commissary Request through a specified vendor who will provide a complete selection. Lists will be available for selection in the Prison Library.

2. Trust Withdrawal Slips, a letter of request to the vendor and necessary postage will be initiated with the designated Library Clerk. These will be routed to the Trust Office by the purchaser for review and approval.

3. Trust Office checks to see if funds are available and obtains 10% charge for I.W.F.

4. The Trust Office prepares check to vendor and forwards this with postage and letter of request to Accounting Office for signature.

5. Accounting Office routes to Mail Office. All communications from inmates will have their return address like any other correspondence.

6. When books are received they will be routed to the # 5 Building Canteen Clerk for distribution to the individual inmates.

7. All communications from vendor to inmates will be handled by inmates. Any return of checks will be routed to the Accounting Office and communications sent to inmates.

8. The name of the vendor will be supplied prior to 11/1/70.

9. Review and approval of soft-backed books will be in accordance with Section 2600 of the Penal Code.

10. Books excluded under Section 2600 of the Penal Code will be returned to the vendor or placed in the inmate's property.

(s) J. B. Gunn
J. B. Gunn
Associate Warden, Custody
cc: Warden
    All Housing Unit Bulletin Boards
    Yard Bulletin Board
    Captain

(s) H. G. Morrill
H. G. Morrill
Acting Business Manager

Mail Room Sgt. (10)
All Lieutenants
#5 Bldg. Sgt.
#5 Bldg. Canteen Clerk (5)
All Correctional Counselors
Program Administrator (5)
Trust Office
Entrance Gate
East Gate
West Gate
Mr. Gregory, Librarian (10)
Canteen Mgr.
All Division Heads (5)

CALIFORNIA STATE PRISON AT FOLSOM
Represa, California

To: All Concerned

Date: October 21, 1970
Subject: Policy Regarding
Inmate Purchase
and Receipt of Newspapers,

From: J. B. Gunn
Acting Warden

Periodicals and Books
*Revised:* 10-21-70

I. GENERAL POLICY

A. In accordance with Penal Code Section 2600, inmates may purchase, receive, and read any and all newspapers, periodicals and books accepted for distribution by the United States Post Office subject to the following provisions:

1. The Prison has the authority to exclude obscene publications and writings, and mail containing information concerning where, how, or from whom such matter may be obtained; and any matter tending to incite murder, arson, riot, violent racism or any other form of violence; and any matter concerning gambling or a lottery.

2. The prison has the authority to open and inspect any and all packages received by an inmate.

3. The number of publications permitted in the possession of an inmate and the procedures for obtaining publications will be subject to limitations as specified in other Folsom Prison regulations.

B. Staff members will submit questionable copies or issues of publications to the Publications Review Committee for determination as to whether an inmate may possess the publication under the terms of Penal Code Section 2600. Determinations as to newspapers and periodicals will be made on an issue-by-issue basis.

C. If a publication is not approved a written statement of the reasons for disapproval will be given the inmate concerned.

II. GUIDELINES AS TO ACCEPTABILITY OF PUBLICATIONS

A. Publications Not Acceptable:

1. Publications dealing with such matters as firearms, explosives, locksmithing, etc., which pose a threat to prison discipline are not acceptable.

2. Any material of a character tending to incite murder, arson, riot, violent racism, or any other form of violence is not acceptable.

3. Any material concerning gambling or a lottery is not acceptable.

4. Obscene matter is not acceptable. The definition of obscene matter is that set out in Penal Code Section 311.

WALTER E. CRAVEN, Warden
(s)  J. B. Gunn
J. B. Gunn, Acting Warden

cc:  All Division Heads
Program Administrator—Adjustment Center (10)
Capt. R. C. Thomas
All Correctional Counselors
All Lieutenants
Ranch Dorm (5)
Mail Room Sergeant (10)
Canteen Manager (5)
Receiving and Release (5)
All Building Bulletin Boards
Yard Bulletin Board
No. 5 Building Clerk
Mens' Advisory Council