Opinion
DeCRISTOFORO, J.
Benjamin Carl Adler appeals from his misdemeanor convictions under Penal Code section 311.2 for the sale of two obscene *Supp. 27 films, the possession of two other obscene motion picture films and the sale of an obscene book. Defendant William J. Rose appeals from his misdemeanor conviction of the same Penal Code section for sale of the same book. Another misdemeanor charge against defendant Rose for sale of obscene films (different from the Adler films) was dismissed upon motion of the People after the jury’s inability to reach a general verdict although having rendered a special verdict that one of the films was not obscene; the court ordered the entry of a verdict of not guilty as to the defendant Benjamin Carl Adler on another charge of sale of obscene film after the juiy was unable to arrive at a general verdict but did render a special verdict that the particular film in question (different from the first two Adler films) was not obscene. The defendants appeal from the judgments of conviction.
At the trial, it was shown that appellant Adler on October 14, 1967, sold two films to a district attorney’s investigator; four days later, two other films were seized from the trunk of Adler’s car, pursuant to a search warrant. On May 8, 1968, the book “Love Together” was purchased by a sheriff’s detective from a sales clerk in the Fulton Book Store, owned by defendant Rose. On June 6, 1968, the same book “Love Together” was purchased by the chief deputy district attorney of Sacramento County, from a sales clerk in the K Street Book Store owned by appellant Adler. The prosecution further presented expert testimony that the films and book are obscene by statewide standards and the films and book were received into evidence, over objection. Appellants presented expert testimony that the items were not obscene, either by state or national attitudes. Each side fortified its contention by rebuttal and sur-rebuttal testimony.
Appellants contend: (1) The book “Love Together” is not obscene; (2) misinstruction to the jury on the element of social importance; (3) misinstruction to the jury of a statewide rather than nationwide community: (4) insufficiency of the proof and misinstruction on the element of scienter; (5) unlawful seizure of films because the warrant was general and over-broad, and the seizure was without a prior adversary hearing.
In order to consider the defendants’ contentions, it is necessary to bring into its most current focus the general rules relative to obscenity as articulated by the United States Supreme Court. In Roth v. United States, (1957) 354 U.S. 476 [1 L.Ed.2d 1498, 77 S.Ct. 1304], and its companion case of Alberts v. California convictions under federal obscenity statutes punishing the mailing of obscene, lewd, lascivious or filthy material, and convictions under the California statute proscribing the keeping for sale or advertising of material that is obscene or indecent were affirmed. Against the contention that such matters were protected as free speech *Supp. 28 under the First Amendment to the United States Constitution, the court squarely determined that obscenity is not within the area of constitutionally protected speech or press.
Whether spawned or encouraged by the dissenting views expressed in Roth, subsequent judicial expression did lend growing support to the view that, at least because of its difficulty of definition and/or because of the lack of agreement as to what in fact is obscene, obscenity was no longer a valid subject for statutory prohibition. It would now appear that the high-water mark of the view that obscenity is “constitutionally protected” was Stanley v. Georgia (1969) 394 U.S. 557 [22 L.Ed.2d 542, 89 S.Ct. 1243], which held that the mere private possession of obscene matter cannot constitutionally be made a crime. The “right to receive” obscene materials spoken of in Stanley was thereafter interpreted in the lower federal courts as providing constitutional protection to obscenity for its very content. (See for example Karalexis v. Byrne (W.D. Pa. 1969) 306 F. Supp. 1363, later overruled in Byrne v. Karalexis (1971) 401 U.S. 216 [27 L.Ed.2d 792, 91 S.Ct. 777].)
These contentions were on May 3, 1971, squarely rejected by the United States Supreme Court in United States v. Reidel, 402 U.S. 351 [28 L.Ed.2d 813, 91 S.Ct. 1410] and United States v. Thirty-Seven Photographs, 402 U.S. 363 [28 L.Ed.2d 822, 91 S.Ct. 1400] both of which reassert that obscenity is not within the area of constitutionally protected speech or press and that Roth has not been overruled and does remain the law. The opinion of the court in Reidel, by Mr. Justice White points out that: “[respondent] Reidel . . . stands squarely on a claimed First Amendment right to do business in obscenity and use the mails in the process. But Roth has squarely placed obscenity and its distribution outside the reach of the First Amendment and they remain there today. Stanley did not overrule Roth and we decline to do so now.” (402 U.S. 351 at p. 356 [28 L.Ed.2d 813 at p. 818, 91 S.Ct. 1410 at p. 1413].) And the concurring opinion of Mr. Justice Harlan in Reidel is equally positive (402 U.S. at p. 358 [28 L.Ed.2d at p. 819, 91 S.Ct. at p. 1414]): “Either Roth means that government may proscribe obscenity as such rather than merely regulate it with reference to other state interests, or Roth means nothing at all. And Stanley, far from overruling Roth, did not even purport to- limit that case to its facts: ‘We hold that the First and Fourteenth Amendments prohibit making mere private possession of obscene material a crime. Roth and the cases following that decision are not impaired by today’s holding . . . .’ 394 U.S. at 568.” The “right to receive” discussed in Stanley is thus clarified to- refer simply to the privacy of a man’s thoughts rather than modes of commercial or other distribution. The area of obscenity then remains properly one for legislation reflecting the philosophies and the desires of the populace as reflected - *Supp. 29 by their elected representatives. Those differing philosophies, that obscenity should be prohibited, or that obscenity should merely be regulated to insulate the young (see for example the majority and dissenting opinions in People v. Luros, 4 Cal.3d 84 [92 Cal.Rptr. 833, 480 P.2d 633], decided on Feb. 18, 1971, before United States v. Reidel, supra) are recognized as being reserved for the legislative expression of the states: “This may prove to be the desirable and eventual legislative course. But if it is, the task of restructuring the obscenity laws lies with those who pass, repeal, and amend statutes and ordinances. Roth and like cases pose no obstacle to such developments.” (United States v. Reidel, supra, 402 U.S. at n. 357 [28 L.Ed. 2d at p. 818, 91 S.Ct. at p. 1413].)
Penal Code section 311.2, as it read at the time of these offenses provided: “Every person who knowingly [:] sends or causes to be sent, or brings or causes to be brought, into this state for sale or distribution, or in this state prepares, publishes, prints, exhibits, distributes, or offers to distribute, or has in his possession with intent to distribute or to exhibit or offer to distribute any obscene matter is guilty of a misdemeanor.” Against this statutory language we turn to a consideration of appellants’ contentions.
I
They first urge that “The book ‘Love Together’ is not obscene and that Penal Code 311.2 as construed and applied to authorize the judgments of conviction rendered against the defendants herein based upon the sale of the said book violates the free speech and press, due process and equal protection provisions of the First and Fourteenth Amendments to the United States Constitution, violates the parallel provisions of the State Constitution and the rulings of the United States Supreme Court and other Federal and State Courts holding comparable books to be entitled to constitutional protection.” In support of this contention, appellants urge that explicit description of sexual activity in a book is not synonymous with obscenity and that questions of taste are ultimately a matter for the public to decide for itself. Appellants then cite a number of cases holding other books, which they allege to be completely comparable to “Love Together,” not obscene. Respondent counters with case citations as to still other publications which have been held obscene as that term is defined in Roth, supra, as well as its testimonial evidence of the obscenity of “Love Together.” Having reviewed the book, as this court must under Zeitlin v. Arnebergh (1963) 59 Cal.2d 901 [31 Cal.Rptr. 800, 383 P.2d 152, 10 A.L.R.3d 707] and applying the three-pronged Roth test which was enacted into the definition of “Obscene,”[1] this court has no difficulty in stating that *Supp. 30 the dominant theme of the book taken as a whole appeals to a prurient interest in nudity and sex. It is a vile and pointless recitation of continuously repeated heterosexual, homosexual and lesbian copulation and coupling—oral, genital and anal—all of orgiastic proportion, frequently involving more than two subjects, and early degenerating to sadism, torture and masochism. It is patently offensive and does affront contemporary community standards relating to the description or representation of such matters, and is material which is utterly without redeeming social value.
II
Appellant’s second contention is that “Penal Code Section 311.2 as construed and applied to authorize the judgments of conviction herein upon an uncontroverted record showing that the films involved herein are not utterly without redeeming social importance and upon the giving of instructions and the refusal to instruct as requested by appellants with respect to the element of social importance, violates the free speech, due process and equal protection provisions of the First and Fourteenth Amendments to the United States Constitution and the parallel State constitutional guarantees.” The first part of this contention is that the prosecution failed to adduce any evidence that the films are utterly without redeeming social importance, whereas appellants did produce several witnesses who affirmatively testified that the films did have redeeming social importance, so that, appellants urge, the record is then uncontroverted that the films did have redeeming social importance and therefore cannot provide the basis for an obscenity prosecution. Respondents’ answer is to point to their expert testimony that the films had no artistic merit, had no-story, no relationship that changed, no dialogue, or communication, nor did they have psychological value. In this court’s view the net effect of such testimony is that the material is utterly without redeeming social importance, and the failure to use those specific words does not diminish the evidentiary import of the words actually used as supportive of that conclusion. Additionally, appellant’s argument overlooks the films themselves which were viewed by the jury and,- by their verdict, were obviously without redeeming social importance to that jury. This court, having viewed the films pursuant to Zeitlin v. Amebergh, supra, heartily concurs. The films are hard-core pornography and nothing more; they depict only sexual intercourse, oral copulation, masturbation and self-manipulation, for no purpose other than a depiction of the activity of the moment, whether it be individual, mutual by two- persons of the same *Supp. 31 or opposite sex, or group by more than two persons. The portrayals can appeal to nothing except a prurient interest in sex and nudity; they do substantially exceed customary or even reasonable limits of candor, and having no purpose other than explicit depiction of sexual activity, can have no conceivable redeeming social importance. It is thus unnecessary to reach a consideration of People v. Newton, 9 Cal.App.3d Supp. 24 [88 Cal.Rptr. 343] which the People cite as holding that if prurient interest and limits of candor are established by the evidence, the burden of going forward with evidence that there is some redeeming social importance is placed upon the defense, and the appellants’ violent disputation of Newton as having been wrongly decided in that the matter of redeeming social importance is an element of the offense itself which must be established positively by the People. The films themselves, being evidence in the case, in conjunction with the prosecution’s testimony already adverted to, more than cover the People’s burden of proof on the element of social importance.
Appellants further contend the jury was misdirected and misinstructed, by application of the concepts of the average person and contemporary standards to the element of social importance, appellants’ urging that no such restrictions on that element (“utterly without redeeming social importance”) were either contemplated by the Legislature in enacting the statute nor are such restrictions permissible under the federal Constitution, citing Roth, supra: “All ideas having even the slightest redeeming social importance—unorthodox ideas, controversial ideas, even ideas hateful to the prevailing climate of opinion—have the full protection of the guarantees ... [of the First Amendment].” (Italics added.) (354 U.S. at p. 484.) and Zeitlin v. Arnebergh, supra: “By [implying] the terms ‘utterly’ the Legislature indicated its intention to give legal sanction to all material relating to sex except that which was totally devoid of social importance.” (59 Cal.2d at p. 920.) Thus appellants contend that if the evidence shows that the matter has some social value, however slight, the matter cannot constitutionally be found obscene even if the average man, applying contemporary standards, would conclude that the matter is utterly without redeeming social importance. The court refused to instruct the jury, as requested by appellants, that: “the question of whether the matter is utterly without redeeming social importance is not measured by what the average person believes to have social importance but whether in fact the matter is utterly without redeeming value.” And: “All ideas, having even the slightest redeeming social importance—unorthodox ideas, controversial ideas, even ideas hateful to the prevailing climate of opinion—have the full protection of the guarantees, unless excludable because they encroach upon the limited area of more important interests.”
*Supp. 32 The relevant instructions as given to the jury in their entirety were as follows:
“As used in these instructions ‘obscene’ means that to the average person, applying contemporary standards, the predominant appeal of the matter taken as a whole, is to prurient interest, i.e., a shameful or morbid interest in nudity, sex, or excretion, which goes substantially beyond customary limits of candor in description or representation of such matters and is matter which is utterly without redeeming social importance.” (Pen. Code, § 311, subd. (a).)
“That an average person, applying contemporary standards, would conclude that: ... (3) the material is utterly without redeeming social importance.”
“The contemporary standard to' which the law makes reference is set by what is, in fact, accepted and not by what some persons or groups of persons may believe the community as a whole ought to accept or refuse to accept.
“You are instructed that, for purposes of determining the obscenity of the material here in question, the relevant community is the entire State of California.”
“The matter must be measured by its appeal to the average person. The average person is, of course, .determined by a synthesis of the entire community, including persons of all sexes, religions, nationalities, creeds, ages, et cetera, but once the jury has determined the average person it must be remembered that the matter must be measured by such average person, and not by young persons or the susceptible.
“Putting this in still another manner: In determining who is an average person under the definition of obscenity which I have previously given to you, you are to consider society as a whole, young and old, educated and uneducated, the religious and the irreligous, men, women and children.”
“The word ‘redeeming’ in the context herein refers not to a balancing of the alleged pruriency against the social importance of the material, but rather to the presence of matters of social importance in the content which will recover for the material its position as constitutionally protected utterance.
“To be of social importance the matter must be of value to society; thus a matter that is of no value to society is utterly without redeeming social importance.”
*Supp. 33 “Under the law, the word ‘utterly’ which appears in the definition has been defined in the law as follows: to an absolute or extreme degree; to the full extent; absolutely; altogether; entirely; fully; thoroughly; totally.”
“In determining whether or not the matter has social importance you may consider among other things if it deals with the basic realities of life as the artist sees it; if it is a serious work of art; and if it honestly probes social values.”
“A work designed to entertain or amuse is as much entitled to the protection of free speech as a scientific or educational work.”
“A motion picture film or books have social importance if they have the capacity to broaden man’s range of sympathies or consciousness, or to enable him to see, hear, or appreciate what he might otherwise have missed, or deepens his emotions, or makes life seem richer, more interesting or more comprehensible, or provides insights into man’s relationship to the society in which he lives. A film or book may have social importance even if they appear worthless to the average person or to- most people.”
“Your own personal and social views on material such as that charged in the complaint may not be considered. Thus, whether you believe that the material is good or bad is of no concern; so, too, you may not consider whether in your opinion the material is moral or immoral; whether it is likely to be helpful or injurious to- the public morals. Similarly, whether you like or dislike the material; whether it offends or shocks you, may not be considered by you. You may think the material is immoral, shocking or offensive, and yet you must acquit the defendant if it is not obscene as the Court has defined that term for you.”
“You are instructed that Section 311.8 of the Penal Code provides that it shall be a defense, in any prosecution for violation of Section 311.2 of the Penal Code, that the act charged was committed in aid of legitimate, scientific, or educational purposes.” (Pen. Code, § 311.8.)
Respondent contends that when considered in their entirety, the instructions mean that the personal standards of the jurors could not be used, that the standards of the community were to be used to determine if the material had the least value to any segment of society, and that the question was not whether the average man would conclude that the material had some value to him, but rather whether the average man would conclude that the material had some value to someone. Respondent further contends that the instruction actually given is more restrictive than required because the community standards concept need only be used to test the customary limits of candor portion of the three-pronged Roth test. (Mishkin v. New *Supp. 34 York (1966) 383 U.S. 502 [16 L.Ed.2d 56, 86 S.Ct. 958]; In re van Geldern (1971) 14 Cal.App.3d 838 [92 Cal.Rptr. 592].) Finally, respondent concludes that the error, if any, was harmless beyond a reasonable doubt and therefore not reversible.
There was no error of instruction. In their totality, the instructions given more than amply voiced the Roth and Zeitlin scope of protection to ideas having any redeeming social importance, so that the court did actually give, although not in the appellants’ particularly chosen words, the direction that matters of any redeeming social importance, though unpopular or even personally distasteful, cannot be found obscene.
There then remains appellants objection to the “average person applying contemporary standards” as to redeeming social importance. Assuming arguendo that this concept applies to more than the “customary limits of candor” prong of Roth, the language read to the jury was that of the statute itself, and the court then fully amplified and explained that statutory language, and the constitutional limits thereon. (Cf. People v. Thomas (1945) 25 Cal.2d 880, 895 [156 P.2d 7].) Implicit in the opinion in Zeitlin v. Arnebergh, supra, involving this same statute, is the rejection of appellants’ contention. There, while considering “average person” specifically relative to predominant appeal to prurient interest, the court observes: “Finally, we do not believe that the definition of ‘obscene’ material as that which ‘to the average person . . . predominant appeal ... is to prurient interest . . .’ (italics added) indicates that the ultimate determination of that question is always for the jury. These words fix a standard which is to be applied to the material; they do not designate the body which is to apply the standard. The statutory language does not inherently predicate a question for the jury; it merely frames a definition. As we hereinafter point out, the Legislature wrote the words ‘average man’ into the statute because a lesser standard would offend constitutional guarantees; the phrase does not serve to mark the respective spheres of the court and jury.” (59 Cal.2d at p. 911.)
The court then discusses Roth and subsequent cases, recites how the Legislature, cognizant of the applicable constitutional guarantees, wrote a statute which in substance prohibited hard-core pornography as the only material “utterly" devoid of social importance and construes “redeeming" as not balancing pruriency against social importance. The court then puts itself to the task of applying those principles for the purpose of determining the question of fact mixed with determination of law (“constitutional fact”), the obscenity or not of “Tropic of Cancer.”
The instructions here given to the jury accurately reflect the *Supp. 35 “standard which is to be applied to the material’ (Zeitlin v. Arnebergh, supra), even though that same standard is ultimately applied by the court itself, and that is, not what any individual may want subjectively but whether the material could, objectively, have or be of some value to someone. There was no misdirection of the jury, and by its own independent review and evaluation of the films and book forming the basis of appellants’ convictions, this court finds those materials to be utterly without redeeming social importance and unquestionably obscene. Had there been any error in instruction, it would have been harmless beyond a reasonable doubt. (Chapman v. California (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824. 24 A.L.R.3d 10651.)
III
Appellants’ third major contention is that “Penal Code Section 311.2 as construed and applied to authorize the judgments of conviction herein upon the basis of statewide rather than national community standards violates the free speech, due process, and equal protection provisions of the First and Fourteenth Amendments to the United States Constitution, and the parallel California state constitutional guarantees.” This contention is based upon the court’s instruction to the jury that for the purposes of determining contemporary community standards, the relevant community is the State of California.
Respondent is correct that In re Giannini (1968) 69 Cal.2d 563 [72 Cal.Rptr. 655, 446 P.2d 535] is dispositive of thh issue. There, in. considering the contemporary standards test of judging obcenity under the statute here in question, the court expressly designated, the State of California, although two members of that court disagreed and would even authorize the smaller, local, community rather than the entire state. The caveat as to Giannini reflected in Barrows v. Municipal Court (1970) 1 Cal.3d 821 [83 Cal.Rptr. 819. 464 P.2d 483] is not pertinent, because it deals with the vagrancy statute, Penal Code section 647. While Giannini was a prosecution for “topless” dancing, the court's discussion of the relevant “community” was in express consideration of the definition of “obscene” in Penal Code section 311, subdivision (a), the very statute here involved. Our Supreme Court expressly considered and evaluated the United States Supreme Court cases on obscenity, including Jacobellis v. Ohio (1964) 378 U.S. 184 [12 L.Ed.2d 793, 84 S.Ct. 1676]. After first pointing out that the United States Supreme Court was evenly split on whether a “national community” is required in determining whether a work is obscene, and then observing that in the absence of guidance from that court the lower courts have divided so as to support at least three *Supp. 36 standards: national, state, and “local” or citywide (69 Cal.2d at p. 578), Giannini then resolves the matter, for the reasons therein expressed, in favor of a statewide standard. The caveat (69 Cal.2d 579) that the case did not involve films or books simply recognized that such items would require reconciliation of the practical problems of producing evidence of a national standard with the possibility of some claimed deference of expression. The reasons persuading the court to a statewide standard in Giannini have full application here. Further, the United States Supreme Court did in Roth cite with approval the trial court’s instruction which clearly suggested only a local and not even statewide standard.[2] Additionally, it can be suggested that there is no real “dilemma” in applying a statewide “community” standard to the “national” protection of the First Amendment. The test itself, “the average person applying contemporary community standards” (Roth v. United States, supra) applies throughout the nation, but that nation is made up of varying communities which may well entertain varying views.
IV
Appellants fourth contention is that “Penal Code Section 311.2 as construed and applied to authorize the judgments of conviction for sale of the book ‘Love Together’ without proof that the appellants had knowledge of the contents or the alleged obscenity of the book and upon the giving of instructions and the refusal to instruct as requested by appellants with respect to the element of scienter, violates the free speech, due process, and equal protection provisions of the First and Fourteenth. Amendments to *Supp. 37 the United States Constitution and the parallel state constitutional guarantees.” While the appellants did each testify that they had never read the particular book “Love Together” and they did not believe or have reason to believe that the book was obscene, and while scienter is an element of the offense and must be proven by the People, Smith v. California (1959) 361 U.S. 147 [4 L.Ed.2d 205, 80 S.Ct. 215], as the United States Supreme Court did itself observe in Smith, “The circumstances may warrant the inference that he was aware of what a book contained, despite his denial” (361 U.S. at p. 154 [4 L.Ed.2d at p. 212].) The circumstances shown by the evidence in this case, that the appellants were owner-proprietors and not absentee owners, whose stores were clearly denominated and advertised as “adult” book stores, and who admitted that they dealt in adult books concerned primarly or exclusively with sex, is sufficient to sustain the conviction. The trial court correctly instructed that the knowledge which appellants must have could be established by circumstantial evidence. That it was so established to the jury is demonstrated by their verdict.
V
Appellants fifth and final contention is that “Penal Code Section 311.2 and Penal Code Section 1523-1542 as construed and applied to authorize the judgment of conviction herein based upon the seizure of films pursuant to a general and overbroad warrant and without a prior adversary hearing violates the free speech, search and seizure, due process, and equal protection provisions of the First, Fourth and Fourteenth Amendments to the United States Constitution and the parallel state constitutional guarantees.”
The two films constituting the basis of appellant Adler’s conviction of the offense of possession for sale were seized pursuant to a search warrant which directed the seizure of “numerous films, both moving and still, portraying obscenity.” It is this allegedly “overbroad” language in using merely the word “obscenity” which appellants attack. Respondent correctly points out that the procedures leading to the issuance of the warrant and surrounding its execution were more than adequate to avoid suppression of constitutionally protected publications. A municipal court judge viewed the two films which had been purchased from the appellant Adler, at which time he had taken them from the trunk of his car, which at that time was seen to contain other films similar in size and markings, at least one of which such other films had been described by the appellant at that time as depicting two women “eating each other.” After the seizure, the appellant did have, and indeed did pursue, by way of suppression motion under 1538.5 of the Penal Code, the opportunity and remedy by which to litigate, in timely fashion, the issue of obscenity, thereby satisfying the *Supp. 38 requirements of due process of law. (Aday v. Superior Court (1961) 55 Cal.2d 789 [13 Cal.Rptr. 415, 362 P.2d 47]; Monica Theater v. Municipal Court (1970) 9 Cal.App.3d 1 [88 Cal.Rptr. 71].) The prior adversary hearing advocated by appellant has been expressly rejected in Monica, supra.
The judgments therefore must be affirmed. No contrary result is compelled by either People v. Noroff (1967) 67 Cal.2d 791 [63 Cal.Rptr. 575, 433 P.2d 479] or Redrup v. New York (1967) 386 U.S. 767 [18 L.Ed.2d 515, 87 S.Ct 1414].
All that was involved in Noroff, supra, was a nudist magazine which, while displaying the naked male or female including genitalia, did not depict sexual activity of any form. As to this, the United States Supreme Court: “. . . . has decided that the judiciary cannot engage in the task of placing legal fig leaves upon variegated presentations of the. human figure. That court has told us that no matter how ugly or repulsive the presentation, we are not to hold nudity, absent a sexual activity, to be obscene.” (67 Cal.2d at p. 797, italics added.) Noroff further concluded that the dominant theme of that magazine taken as a whole, did not appeal to a prurient interest in sex. The “pandering” discussion was rejected because it was advanced for the first time on appeal, whereas the originial charge in the indictment had been the obscenity per se of the magazine. The sexual activity absent in Noroff is present in the instant appeals; indeed, the representations of the nude human forms herein are in nothing but a sexual context. The dominant theme of the materials herein, taken as a whole, appeal only to a prurient interest in sex, and have no redeeming social value.
Redrup v. New York, supra is simply of no value, in this or any other current obscenity proceeding. The very diversity of the rules recited therein prevents that opinion from standing for any clearly definable principle of obscenity law. To synthesize Redrup into the whole by en-grafting the requisite of pandering onto the law of obscenity requires an almost labyrinthine process of implication and construction, since the Supreme Court has never said that in express terms. This (pandering) is too consequential a limitation upon the law of obscenity to be assumed without specific declaration. Certainly the fountainhead of the current law, Roth v. United States, supra, never contained that limitation, and none of the subsequent reaffirmations of Roth, through Stanley v. Georgia and Reidel and Thirty-Seven Photographs, supra, have announced the addition of the element of pandering to the conduct criminally actionable as obscenity. It can further be suggested that Reidel and Thirty-Seven Photographs have “returned” judicial thinking to the original path of Roth, *Supp. 39 and whatever straying therefrom may have been engendered by Redrup, Stanley v. Georgia and Karalexis v. Byrne, supra, is now corrected. Whatever Redrup may have been intended to announce or exemplify, it should not authorize the construction of a new wall of limitation (pandering) upon obscenity law.
The judgments are affirmed.

At the time here involved, Penal Code section 311, subdivision (a), provided: “ ‘Obscene’ means that to the average person, applying contemporary standards, the predominant appeal of the matter, taken as a whole, is to a prurient interest, i.e., a *Supp. 30 shameful or morbid interest in nudity, sex, or excretion, which goes substantially beyond customary limits of candor in description or representation of such matters; and is matter which is utterly without redeeming social importance.”

“ ‘. . . The test is not whether it would arouse sexual desires or sexual impure thoughts in those comprising a particular segment of the community, the young, the immature or the highly prudish or would leave another segment, the scientific or highly educated or the so-called wordlywise and sophisticated indifferent and unmoved. . . .
“ ‘The test in each ... is the effect of the book, picture or publication considered as a whole, not upon any particular class, but upon all those whom it is likely to reach. In other words, you determine its impact upon the average person in the community. The books, pictures and circulars must be judged as a whole, in their entire context, and you are not to consider detached or separate portions in reaching a conclusion. You judge the circulars, pictures and publications, which have been put in evidence by present-day standards of the community. You may ask yourselves does it offend the common conscience of the community by present-day standards.
44 4
“ ‘In this case, ladies and gentlemen of the jury, you and you alone are the exclusive judges of what the common conscience of the community is, and in determining that conscience you are to consider the community as a whole, young and old, educated and uneducated, the religious and the irreligious—men, women and children.’ ” (354 U.S. at p. 490 [1 L.Ed.2d at p. 1510].)